Daisy **SEIBER**, Respondent,

v.

**MOOG AUTOMOTIVE, INC.**, Appellant.

No. 55520.

Missouri Court of Appeals,
Eastern District,
Division Two.

May 16, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 13, 1989.

Application to Transfer Denied
Aug. 1, 1989.

Raymond J. Flunker, St. Louis, for appellant.

Richard Schaeffer, St. Louis, for respondent.

GARY M. GAERTNER, Judge.

The employer (Moog Automotive, Inc.) appeals from an award by The Missouri Labor and Industrial Relations Commission

(Commission) in favor of employee (Daisy Seiber) and against employer. The Commission, one commissioner dissenting, upheld a decision by the Administrative Law Judge (ALJ), who had awarded Seiber 50% permanent partial disability of the arm at the elbow. Moog Automotive asserts that an appellate court is not bound by the findings of the Commission where such findings are reached by interpretation or application of law, and that this case falls within that province of review. Moog Automotive also argues that the injury sustained by Seiber during a lunch break in an on-premises basketball game did not, as a matter of law, arise out of and in the course of employment. We affirm.

The evidence reveals that on October 15, 1985, Seiber was employed by Moog Automotive. On that date she injured herself on the company's premises while playing a lunch time basketball game on a court erected by the company. The lunch period was uncompensated. The injury resulted in a fracture of the elbow requiring surgery. At the hearing before the Commisison, Moog Automotive relied on the testimony of its general foreman, Walter Fritz. Fritz stated that the basketball backboard and hoop had been installed at the request of union members. Furthermore, Fritz stated that employees were free to use it only on their unpaid breaks. The only equipment furnished by Moog Automotive was the ball, which was kept in the foreman's office, the use of which was in no way restricted by the foreman; the court was open to all employees. The only rule regarding use of the court was that it not be used on company time. Fritz also agreed that the recreational area was designed to promote the general employee morale of the plant but he stated unequivocally that there was no measurable improvement in production, product quality or company sales attributable to the court.

The testimony of Seiber was factually similar to that of Fritz: the court was located on Moog Automotive's property, Moog had installed the court and the injury occurred during Seiber's unpaid lunch hour. Seiber could not give her assent to the proposition that Moog Automotive had ever encouraged its employees to use the court. She said that the ball was the only equipment provided by Moog Automotive and that her knowledge of the court came from her own observation; Moog Automotive did not notify employees of its existence. Furthermore, she stated that playing basketball was not required for promotion at the company. There was no advance permission required from management and no sign-up sheet was ever posted, nor any rules, nor any management supervision or refereeing at any time. By her account, management was indifferent to use of the court as long as it was not used on company time. Seiber also stated that the regular exercise she got from playing basketball helped her day go more quickly.

We initially note the standard of appellate review in worker's compensation cases. This court will view the record in the light most favorable to the findings and award of the Commission, whose award must be affirmed if it is supported by competent and substantial evidence. However, where the facts are not disputed, the award which should be entered by the Commission becomes a question of law and the Commission's ruling is not binding on the appellate court. *Ikerman v. Koch*, 580 S.W.2d 273, 278 (Mo. banc 1979); *Schoessel v. Standard Automotive Components (Missouri Research)*, 539 S.W.2d 708, 709 (Mo.App., E.D.1976).

Succinctly stated the issue on appeal is whether as a matter of law Seiber sustained a compensable injury within the scope of her employment. As the Commission acknowledged, the facts in this claim are essentially undisputed. An injury arises out of one's employment when there is a causal connection between the nature of the employee's duties or conditions under which he is required to perform them and the resulting injury. *Bybee v. Ozark Airlines*, 706 S.W.2d 570, 572 (Mo.App., E.D.1986). Where, as in the present case, there is no dispute as to the facts, the question as to scope of employment is one of law only; it is not a mixed question of law and fact. *McFarland v. St. Louis Car*

*Co.*, 262 S.W.2d 344, 346 (Mo.App., E.D. 1953).

Courts in other jurisdictions have held that an employer must derive substantial direct benefit from the recreational activity beyond the intangible value of the improvement in employee health and morale that is common to all kinds of recreation and social life. *City of Tampa v. Jones,* 448 So.2d 1150, 1152 (Fla. Dist.Ct.App.1984); *Luteran v. Ford Motor Co.,* 21 N.W.2d 825, 827 (Mich.1946); *Lang v. Gorham Corp.,* 219 A.2d 214, 217 (R.I.1966). *See also Holck v. Town of Hempstead,* 63 A.D.2d 1114, 406 N.Y.S.2d 393, 393 (1978).

Several states have limited workers' compensation recovery for recreational activities by legislation. California precludes recovery for injuries arising out of "voluntary participation in any off-duty recreational, social, or athletic activity not constituting part of the employee's work-related duties, except where these activities are a reasonable expectancy of, or are expressly or impliedly required by, the employment...." CAL.LABOR CODE § 3600(a)(9) (West 1986). *See Todd v. Workers Comp. Appeals Bd.,* 198 Cal. App.3d 757, 243 Cal.Rptr. 925, 927 (1988) (employee not entitled to workers' compensation for injuries sustained while playing basketball during an uncompensated lunch break on employer's premises). New Jersey disallows recovery for recreational or social activities unless said activities "are a regular incident of employment and produce a benefit to the employer beyond improvement in employee health and morale...." N.J.STAT.ANN. § 34:15–7 (1980). Nevada further limits recovery by allowing workers' compensation for social or recreational activities only if the employee receives remuneration for participating. NEV.REV.STAT. § 616.110(1) (1985).

 Several Missouri cases have addressed the issue of an employer's liability for an employee's injury sustained during recreational activities. This court has held that an employee injured during a company team softball practice did not suffer an injury arising out of and in course of employment where participation was voluntary and the program was not controlled by the company though the company provided substantial financial support for team and allowed use of employer's premises for team meetings. *Eugea v. Southgate Care Center,* 705 S.W.2d 112, 113 (Mo.App., E.D. 1986). In *Eugea* the employee was injured during a company team softball practice off the premises and, although the company gave the team financial support by paying league dues and providing T–shirts, balls, and bats and allowed use of the employer's premises occasionally for team meetings, the court found the injury had not occurred within the scope of employment. *Id.* at 113. Employer financial support of employee recreational events was held insufficient to support finding the activity work related for purposes of worker's compensation in *Lee v. Western Electric Company,* 695 S.W.2d 510, 512 (Mo. App., W.D.1985). In *Lee* the employer provided most of the company softball team's funds, the softball field was located on the employer's premises, the company mowed and maintained the outfield areas, but play was restricted to non-working hours. The court found that notwithstanding this degree of control by employer, the injured employee could not recover. *Id.* at 512. However, in both *Eugea* and *Lee* the injuries occurred after work, not during lunch as in the case before us. And, in *Conklin v. Kansas City Public Service Co.,* an employee recovered for an injury sustained while watching a lunchtime baseball game on the employer's premises. *Conklin v. Kansas City Public Service Co.,* 226 Mo. App. 309, 41 S.W.2d 608, 614 (1931).

Furthermore, a number of jurisdictions allow recovery for injuries sustained during lunch hour. *Eagle Discount Supermarket v. Indus. Comm'n,* 82 Ill.2d 331, 45 Ill.Dec. 141, 412 N.E.2d 492, 497 (1980) (employee injured while playing frisbee on lunch hour); *Kloer v. Municipality of Las Vegas,* 106 N.M. 594, 746 P.2d 1126, 1128 (App.1987) (employee suffered heart attack resulting from lunch hour basketball game); *Henry v. Lit Bros.,* 193 Pa.Super. 543, 165 A.2d 406, 409–10 (1960) (employee injured during lunch hour football game). *See also Ags Machine Co., Inc. v. Indus.*

*Comm'n of Colo.*, 670 P.2d 816, 817 (Colo. Ct.App.1983) (employee injured playing basketball on work break); *McNamara v. Town of Hamden*, 176 Conn. 547, 398 A.2d 1161, 1166 (1979) (employee injured playing ping pong on premises before work); *Mack Trucks, Inc. v. Miller*, 23 Md.App. 271, 326 A.2d 186, 188 (1974), *aff'd* and opinion adopted, 275 Md. 192, 338 A.2d 71, 71 (1975) (employee injured playing football during afternoon coffee break); *City of Oklahoma City v. Alvarado*, 507 P.2d 535, 537 (Okla.1973) (fireman injured playing volleyball during work hours).

In light of the above-cited cases we hold that an injury sustained by an employee during a lunch hour recreational activity on the employer's premises is compensable where the employer has acquiesced to the activity to the extent that the activity has become a regular incident of employment. In the case before us the employer constructed the basketball hoop and provided the ball. Although the activity was unsupervised, it occurred regularly with the knowledge and approval of employer. The employer acquiesced, therefore playing basketball became a regular incident to employee's employment.

We have not overlooked the effect our decision may have. Expansion of coverage, which will eventually increase the cost to the worker's compensation system, concerns the courts. We acknowledge that employers may forbid recreational activities in the future thus having a negative impact on employee morale and physical fitness. Alternatively, the legislature could restrict coverage in this area.

For these reasons, we believe the award by the Commission is correct as a matter of law. We affirm.

GRIMM, P.J., and KAROHL, J., concur.