Weldon RICHARD, Appellant,

v.

**MISSOURI DEPARTMENT OF COR-RECTIONS and Missouri Department of Natural Resources, Respondent.**

No. WD 63832.

Missouri Court of Appeals,
Western District.

Feb. 1, 2005.

Motion to Transfer to Supreme Court Denied March 29, 2005.

Application for Transfer Denied May 31, 2005.

Randy Charles Alberhasky, Springfield, for appellant.

Peter A. Lyskowski, Jefferson City, for respondent.

Before JAMES M. SMART, JR., P.J., JOSEPH M. ELLIS, and LISA WHITE HARDWICK, JJ.

JAMES M. SMART, JR., Judge.

Weldon Richard appeals the decision of the Labor and Industrial Relations Commission denying his claim for workers' compensation. Mr. Richard, who was a prison inmate at the time of his injury, sought compensation for injuries sustained while working on a project for the Department of Natural Resources. The judgment is affirmed.

## Statement of Facts

Appellant Weldon Richard was injured in a fall while trimming trees. In July 2001, Mr. Richard filed a claim for compensation for his injuries with the Division of Workers' Compensation. A hearing before an administrative law judge (ALJ) was held on June 11, 2003, and memoranda and additional evidence were submitted later that month. The evidence was as follows.

At the time of his injury, Mr. Richard was an inmate with the Department of Corrections (DOC), housed at Camp Hawthorn, a DOC facility. Camp Hawthorn is a work camp located on property owned by the Department of Natural Resources (DNR). All work done by Camp Hawthorn inmates is for the DNR. In order to qualify for Camp Hawthorn, inmates must have a history of "adjustment" to corrections facilities, must have little time left to serve, must request to be assigned there, and must sign a document agreeing to work while there. Inmates working out of Camp Hawthorn do not compete with non-inmates for work, and they do not work side-by-side with non-inmate DNR employees doing the same things in the same capacity.

The inmates' physical custody is transferred to DNR supervisors during the workday until they are returned to the camp in the evening. Throughout, the DOC retains *legal* custody of the inmates. The DNR supervisors are responsible for instructing the inmates as to how to perform their work, and the inmates are expected to follow their directions in order to remain at Camp Hawthorn. The responsibility for the inmates' modest pay ($7.50 per day, or about $150.00 per month) is shared by the DOC and the DNR, and the pay is deposited directly into the inmate's account.

While at Camp Hawthorn, Mr. Richard worked nine to ten hours a day, five days a week—and sometimes on Saturday—in return for wages and the opportunity to live in a somewhat more pleasant and somewhat less restrictive environment. Mr. Richard's duties in winter included trimming trees and cutting logs. In the summer, he mowed, operated a weed eater, welded, and performed other handyman work.

Mr. Richard's actual injury occurred off of DOC premises, while he was working in the Lake of the Ozarks State Park, which is owned by the DNR. George Lombardi, the Director of the Division of Adult Institutions, testified that Camp Hawthorn is physically separate from the Lake of the Ozarks State Park and that the Park itself is not a state prison or penitentiary. Nevertheless, inmates housed at Camp Hawthorn are still considered incarcerated for all legal purposes even while they are working off the Camp's premises, such as at the State Park. They are still under the custody and control of the DOC and are "confined," in that they are not free to come and go as they please.

The perimeter of Camp Hawthorn is clearly marked with "out of bounds" signs, and the inmates are made aware of those signs and their meaning. According to Mr. Lombardi, an inmate who goes past an out of bounds sign is deemed an escapee, sought as an escapee, and prosecuted as such. Likewise, an inmate working off the Camp's premises is considered an escapee if he walks away from the job site. Camp Hawthorn conducts a count of inmates several times each day to ensure that all inmates are in custody.

Mr. Richard presented evidence that he is permanently and totally disabled as a result of the accident and post-traumatic spinal stenosis. On July 1, 2003, the ALJ denied Mr. Richard's claim for compensation on the basis that he was not engaged in employment covered by the Missouri's Worker's Compensation Law. The Labor and Industrial Relations Commission (Commission) affirmed the ALJ's decision on January 22, 2004. Mr. Richard appeals the Commission's judgment.

## Standard of Review

The Missouri Constitution, article V, section 18, provides for judicial review of the Commission's ruling to determine whether it is authorized by law and is "supported by competent and substantial evidence upon the whole record." As a general rule, we review the findings of the Commission and not those of the ALJ. *Higgins v. Treasurer of State of Mo.*, 140 S.W.3d 94, 96 (Mo.App.2004). When the Commission affirms or adopts the findings of the ALJ, however, we review the ALJ's decision and findings as adopted by the Commission. *Id.* We must affirm the Commission's final decision unless it acted without or beyond its power, the decision was procured by fraud, the facts found do not support the decision, or the decision is not supported by sufficient competent evidence in the record. § 287.495.1, RSMo 2000.[1] Decisions of the Commission that are clearly interpretations or applications of law, rather than determinations of fact, are reviewed *de novo* without deference to the Commission's judgment. *Ristau v. DMAPZ, Inc.*, 130 S.W.3d 602, 604 (Mo. App.2004). The interpretation of a statute is a question of law. *Lakin v. Gen. Am. Mut. Holding Co.*, 55 S.W.3d 499, 503 (Mo. App.2001). This case involves the interpretation of a statute; consequently, our review is *de novo*.

---

1. All statutory references are to Revised Statutes of Missouri unless otherwise noted.

## Point on Appeal

Mr. Richard contends that the Commission erred in finding that he was an inmate "confined in" a state prison at the time of his injury and that he was accordingly specifically excluded from worker's compensation coverage pursuant to section 287.090.1(3). Mr. Richard claims that at the time of the accident he was not physically "confined" in a state prison facility. Rather, he argues, he was on a "work-release" program that placed him physically outside of the prison and in the Lake of the Ozarks State Park, where he was working for and in the custody of the Department of Natural Resources.

The issue before this court is a question of law, i.e., whether the claimant is exempt from the Missouri Workers' Compensation Law pursuant to section 287.090.1(3), adopted in 1987. That statute provides, in relevant part, that the Workers' Compensation Law Chapter shall not apply to:

> Employment where the person employed is *an inmate confined in* a state prison, penitentiary or county or municipal jail ..., and the labor or services of such inmate ... are exclusively on behalf of the state, county or municipality having custody of said inmate.... Nothing in this subdivision is intended to exempt employment where the inmate ... was hired by a state, county or municipal government agency after direct competition with persons who are not inmates ... and the compensation for the position of employment is not contingent upon or affected by the worker's status as an inmate[.]

§ 287.090.1(3) (emphasis added). Prior to 1987, the Workers' Compensation Law did not contain a provision specifically exempting prison inmates from coverage. However, prisoners were not generally considered "employees" for purposes of the workers' compensation law. *See Porter v. Dep't of Corr.,* 876 S.W.2d 646, 647–48 (Mo.App.1994) (inmate working as a cook in prison); *see also Bowman v. State,* 763 S.W.2d 161 (Mo.App.1988) (juvenile in detention injured while working as a trash collector).

Here, the ALJ's award, which the Commission affirmed and adopted, denied Mr. Richard's claim because his injury was sustained while he was a prison inmate working exclusively on behalf of the State. The ALJ noted that "[s]ection 287.090.1(3) specifically exempts from the provisions of [the] law inmates confined in a state facility working exclusively for the State." The ALJ concluded that "[t]here is no question regarding Mr. Richard's status as an inmate, his confinement with the Department of Corrections or his work for a state agency." The ALJ also determined that the single exception contained within the statute (i.e., where an inmate has obtained work with a state agency after direct competition with a non-inmate and where the inmate's pay is not affected by his status as an inmate) did not apply in this case. Denying the claim on jurisdictional grounds, the ALJ did not render a decision on any other issues.[2]

Mr. Richard contends that this case turns on the meaning of the phrase "confined in," which appears in the inmate exemption statute. He observes that no court has interpreted the effect of that language as to a "work-release" inmate since the statutory provision was enacted

---

**2.** The ALJ made no findings with regard to the nature or extent of the injury or disability, the wage rate, or medical bills. Mr. Richard contends in his brief that there is no dispute about the fact that he is permanently and totally disabled. Respondent, however, *does* dispute the nature and extent of Mr. Richard's injuries and their cause and effect on his ability to compete in the open labor market.

by the legislature in 1987. In *Porter v. Department of Corrections,* 876 S.W.2d 646 (Mo.App.1994), this court denied the claim of an inmate who was injured while working as a cook *within* a prison. Because the prisoner's injury in that case had occurred prior to the enactment of the inmate exemption provision, the court determined that the provision did not apply. *Id.* at 647. The court denied the claim on the basis that the prisoner was not an "employee" under the workers' compensation law. *Id.* at 648.

Mr. Richard points out that his claim differs from Porter's because Porter was working *within the prison* at the time of his accident. Because Mr. Richard was working off the premises of any DOC facility or property when he was injured, he says he was not "confined in a state prison, penitentiary or county or municipal jail," as required by the statute.

### Statutory Construction

The Missouri Workers' Compensation Law "is entirely a creature of statute." *Simpson v. Saunchegrow Constr.,* 965 S.W.2d 899, 903 (Mo.App.1998), *overruled on other grounds by Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220, 226 (Mo. banc 2003). This court is guided by the general rules of statutory construction in interpreting it. *See id.* The primary rule of statutory construction is to ascertain the intent of the legislature from the language used and to give effect to that intent if possible. *Cook v. Newman,* 142 S.W.3d 880, 886 (Mo.App.2004). In determining legislative intent, we construe words and phrases used in the statute in their plain, ordinary, and usual sense. *Ristau,* 130 S.W.3d at 605. If the language of the statute is unambiguous, we give effect to the language as written and do not resort to rules of statutory construction. *Id.*

First we consider the plain language of the statute. The word "confine" means: "1. To keep within bounds; restrict. 2. To shut or keep in, especially to imprison." AMERICAN HERITAGE DICTIONARY (4th ed.2000). "Imprison" is defined: "[t]o put in or *as if in* prison; confine." *Id.* (emphasis added).

Next we consider the circumstances of Mr. Richard's confinement. The DOC argues that Mr. Richard was "kept within bounds" while at Camp Hawthorn by "out of bounds" signs clearly indicating the boundaries within which the inmates were "restricted." Those signs constituted a line that inmates were not permitted to cross without being deemed an escapee from custody and being prosecuted as such. Furthermore, the DOC points out that he was "kept within bounds" while working at the State Park on work release because he was restricted to the job site and was not free to leave. Mr. Richard had very little control over his schedule, meals, or other activities. Just like any other prisoner, Mr. Richard was required to follow restrictive rules and regulations, was required to stay within posted boundaries, and was not free to leave. The DNR employees treated Richard as a prisoner and confinee in that he was required to follow the instructions of his DNR supervisors, could not leave the job site, and was still under the legal custody and control of the DOC. If he had been dismissed from the program, he would have been returned to the main facility.

It appears that the term "work-release," to the extent it is used to describe the program in which Mr. Richard participated, is somewhat misleading. This was *not* a program that involved the release of prisoners to the community at large so that they could have regular employment during the day and then return to confinement during their off hours. This was a

program that did indeed involve work, but the work was within the confines of DOC activities and restricted state facilities.

Did the General Assembly intend to exclude from workers' compensation recovery only the injuries of those working within the boundaries of the main prison facility? If so, what principle might have guided the legislature in drawing a distinction between those working within the main facility and those working on other state property? Richard provides no satisfactory answer to that. Whether a prisoner is working as a painter within the main facility or working as a painter on cabins in a state park, we see no principled difference.

There is a difference, however, if an inmate is filling a slot that would otherwise be filled by a regular employee from the community. Should the employer in that case, whether it is the state or a private employer, receive the benefit of not having to pay for workers' compensation to protect the worker? Should the worker be left unprotected when the employer would have to provide the protection if the worker was not an inmate? It appears likely that the General Assembly intended to distinguish between regular prison workers such as Richard (who worked only with other prisoners, received only the limited wage of $7.50 per day, and did not compete with non-inmates for the position) and any other prisoners on parole or some other special work-release program in which the inmate competes directly with non-inmates for such a position.

Citing 3 LARSON, *Worker's Compensation Law*, § 64.03[4] (2003), Mr. Richard

states that "there has been a recent trend toward finding coverage for inmates who are injured outside of the prison walls in a work release program, as was the case herein." While there may be such a trend, the trend in Missouri stops where the statute stops it. The relationship between the purported employee and employer controls "[a]s long as there is no statute specifically prohibiting the payment of benefits to the prisoner." *Id.* (emphasis added). Section 287.090.1(3) is a "statute specifically prohibiting the payment of benefits to prisoners" except for prisoners who are in a *true* work-release program whereby they are employed in the community.

■ Richard states that Missouri's workers' compensation laws are to be broadly and "liberally construed with a view to the public welfare." *Ristau*, 130 S.W.3d at 606; § 287.800.[3] In keeping with that mandate, any ambiguities must be resolved in favor of the employee. *Ristau*, 130 S.W.3d at 606. We agree. However, after review of the plain and ordinary meaning of the language used in section 287.090.1(3), and after considering the entire context, we find the legislature's intent to be unambiguous—and it is to exempt from workers' compensation those prison inmates who are working for the state in a typical prisoner job for which they did not compete with members of the community.

## Conclusion

Mr. Richard was a confinee in the legal custody and control of the DOC while incarcerated at Camp Hawthorn, regardless of whether he was working on or off DOC premises. The Law does not provide

3. Section 287.800 states:
   All the provisions of this chapter shall be liberally construed with a view to the public welfare, and a substantial compliance therewith shall be sufficient to give effect to the rules, regulations, requirements, awards, orders or decisions of the division and commission, and they shall not be declared inoperative, illegal or void for any omission of a technical nature in respect thereto.

workers' compensation for his injury. While we regret the seriousness of Mr. Richard's injury, we must follow the law as enacted by the General Assembly.

The judgment is affirmed.

ELLIS and HARDWICK, JJ., concur.