Timothy MILES, Claimant/Respondent,

v.

**LEAR CORPORATION,**
Employer/Appellant,

and

**Zurich North America Insurance Company Insurer/Appellant.**

No. ED 89961.

Missouri Court of Appeals,
Eastern District,
Division Two.

April 29, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 12, 2008.

Application for Transfer Denied
Aug. 26, 2008.

Mary Anne Lindsey, Timothy M. Tierney, co-counsel, St. Louis, MO, for Appellant.

Matthew Joseph Sauter, St. Louis, MO, for Respondent.

BOOKER T. SHAW, Judge.

Lear Corporation and its insurer, Zurich North America Insurance Company (collectively Appellants), appeal the decision of the Labor and Industrial Relations Commission finding that an injury sustained by Timothy Miles during a break-time basketball game on Lear's premises was compensable because Miles was paid while engaging in the activity. Appellants contend that the Commission erred because (1) the injury did not arise out of Miles's employment, (2) the injury was caused by his participation in a voluntary recreational activity and therefore not compensable, pursuant to section 287.120.7 RSMo,[1] and (3) the exception under sub-paragraph (b) of the statute does not apply to render the injury compensable because Miles was not paid for playing basketball. The Commission's decision is affirmed.

### Facts and Procedural History

The relevant facts are undisputed. Miles was hired as a union employee at Lear's Wentzville plant in February 2000. The collective bargaining agreement governing the terms of Miles's employment provided for one 30–minute unpaid break, during which employees were free to leave the premises, and two 15–minute paid breaks during which they were required to remain on-site in order to resume work promptly. While on breaks, some employees and managers often played basketball

in an asphalt area on Lear property just outside the building. The balls, goal, and 3–point line had been there since any witness could recall. On February 19, 2004, Miles injured his knee while playing basketball during a paid break.

The Commission concluded that Miles's injury was compensable because (1) it arose out of and in the course of his employment in that the basketball games were a regular incident of employment, and (2) although Miles was engaged in a voluntary recreational activity for which benefits are generally forfeited, his injury fell within an exception to that rule because he was paid while participating.

### Discussion

*Standard of Review*

■ An appellate court shall only review questions of law and may modify, reverse, remand or set aside an award only if the Commission acted without or in excess of its powers, the award was procured by fraud, the facts found by the Commission do not support the award, or there was not sufficient competent evidence in the record to warrant the making of the award. Section 287.495.1. While the court defers to the Commission on issues of fact, questions of law are reviewed *de novo*. *Dubose v. City of St. Louis*, 210 S.W.3d 391, 394 (Mo.App. E.D. 2006). Appellants present two questions of law.[2]

*Arising Out of Employment*

■ Section 287.120.1 holds an employer liable, regardless of fault, when an em-

---

1. All statutory references are to RSMo 2000.

2. Appellants actually assert three points, but its second point regarding proximate causation is undisputed. Miles acknowledges that

his injury was caused by participation in a voluntary recreational activity, and the Commission's decision confirms it. This Court need not address the point.

67

ployee sustains an injury "arising out of and in the course of his employment." An employee has sustained a compensable injury arising out of and in the course of employment "where an employee's acts were reasonably incidental to commencement of employee's work and were also for the benefit of the employer." *James v. CPI Corp.*, 897 S.W.2d 92, 95 (Mo.App. E.D.1995). The benefit to the employer need not be tangible or great. *Id.*

 "Arising out of" and "in the course of" are two separate tests. *Simmons v. Bob Mears Wholesale Florist*, 167 S.W.3d 222, 225 (Mo.App. S.D.2005). Appellants acknowledge that Miles's injury occurred "in the course of" his employment but deny that it "arose out of" his employment. An injury arises out of employment if it is a "natural and reasonable incident thereof," or, in other words, "when there is a causal connection between the nature of the employee's duties or conditions under which he is required to perform them and the resulting injury." *James* at 94.

 The parties dispute the precedential value of *Seiber v. Moog Automotive, Inc.*, 773 S.W.2d 161 (Mo.App. E.D. 1989), where an employee was injured while playing basketball on her employer's premises during her unpaid lunch break. This Court found that the employer had acquiesced to the activity in that it had become a regular incident of employment. The following year, the General Assembly added paragraph 7 to section 287.120, creating a forfeiture of benefits for voluntary recreational activities. Appellants assert that the amendment precludes all *Seiber*-like claims. We disagree. It merely shifts the burden onto the employee to establish compensability under one of the exceptions. The amendment was enacted "to enable employers to limit their liability for recreational injuries *that otherwise would*

*have been incidental to the employment.*" *Jones v. Trans World Airlines, Inc.*, 70 S.W.3d 468, 471 (Mo.App. W.D.2001) (citing *Wilson v. Monsanto*, 926 S.W.2d 48, 50 (Mo.App. E.D.1996)). (emphasis added) So the scope-of-employment analysis remains central, and *Seiber* is still instructive. We are not persuaded by Appellants strained attempt to create a significant factual distinction in the level of employer acquiescence in the two cases. Seiber's employer furnished the court and ball at the union's request, only allowed the activity during unpaid breaks, and was otherwise indifferent to employees' participation. Lear furnished (albeit passively) the court and ball, even allowed the activity during paid breaks, and was otherwise indifferent.

 Other pre- and post-amendment precedent further supports a conclusion that Miles's activity was incidental to his employment. In *James*, the claimant was injured while feeding a parking meter outside her place of employment. This Court found that the "activity was of incidental benefit to employer because parking was necessary to the claimant's employment. A causal connection existed between the conditions under which claimant was required to perform her duties and the resulting injury." *Id.* at 95. Similarly, in *Bybee v. Ozark Airlines*, 706 S.W.2d 570 (Mo.App. E.D.1986), an employer had a practice of allowing its employees to use company tools for personal use on company premises during breaks. Where an employee was injured in the parking lot while repairing his car, this Court found that the activity provided an incidental benefit to the company because its practice encouraged employees to remain on-site. In *Cox v. Tyson Foods, Inc.*, 920 S.W.2d 534 (Mo.1996), the Supreme Court found compensable an injury that incurred while an employee was returning to work from a trip to a convenience store during his paid

break, reasoning that "activities for the comfort or convenience of the employee are considered incidental to employment when they occur *within* reasonable limits of time and place because they benefit the employee and thereby indirectly benefit the employer." *Id.* at 537.

Appellants' reliance on *Wilson* is misplaced. In *Wilson,* we found that an employee's off-site solo bicycle ride during a partially paid break was not incidental to his employment. "[A] healthier, happier employee is ... not the type of benefit that invokes the mutual benefit doctrine." *Id.* at 50. Here, by contrast, Lear requires its employees to remain on company premises during their paid breaks to promote punctuality in resuming work. Allowing employees to play basketball on-site furthered that objective and also supported positive collective morale. Because Lear received an incidental benefit, the activity arose out of and in the course of Miles's employment. Point denied.

*Exception under Sub–Paragraph (b)*

Paragraph 7 of section 287.120 relieves an employer of liability for injuries that an employee incurs as a result of participation in a recreational activity, subject to three exceptions. At the time of Miles's injury, the statute provided as follows:

Where the employee's participation in a recreational activity or program is the proximate cause of the injury, benefits or compensation otherwise payable under this chapter for death or disability shall be forfeited regardless that the employer may have promoted, sponsored or supported the recreational activity or program, expressly or impliedly, in whole or in part. The forfeiture of benefits or compensation shall not apply when:

(a) The employee was directly ordered by the employer to participate in such recreational activity or program;

(b) The employee was paid wages or travel expenses while participating in such recreational activity or program; or

(c) The injury from such recreational activity or program occurs on the employer's premises due to an unsafe condition and the employer had actual knowledge of the employee's participation in the recreational activity or program and of the unsafe condition of the premises and failed to either curtail the recreational activity or program or cure the unsafe condition.

Miles asserted theories of compensability under both sub-paragraphs (b) and (c). The Commission's decision relies on sub-paragraph (b) and does not discuss evidence or provide analysis relating to sub-paragraph (c), so we do not opine on the latter. The Commission concluded that Miles's injury fit within exception (b) in that he was paid wages *while* participating in the activity that caused it.

Appellants criticize the Commission for its plain meaning interpretation of the statute, asserting that the legislature really meant to provide compensation only when employees are paid *for* participating in a recreational activity. In essence, Appellants would have this Court interpret the statute other than in accordance with its plain and unambiguous meaning. "We interpret the workers' compensation law according to the general rules of statutory construction." *Frazier v. Treasurer of Missouri as Custodian of the Second Injury Fund,* 869 S.W.2d 152, 156 (Mo.App. E.D.1993). "Our primary goal is to ascertain the intent of the legislature by considering the plain and ordinary meaning of the terms used." *Id.* We will not create an ambiguity in a statute, where none exists, in

order to depart from a statute's plain and ordinary meaning. *Premium Standard Farms, Inc. v. Lincoln Tp. of Putnam County*, 946 S.W.2d 234, 239 (Mo. banc 1997). In other words, where a statute's plain meaning is clear, courts must resist the urge to divine a legislative intent that confers some other meaning. As we recognized in *Seiber*, any unintended consequences are best resolved by the legislature, not the judiciary.[3]

Appellants' further reliance on Wilson under this point is again misplaced. Appellants emphasize our observation in Wilson that no pre-amendment case law allows for compensation for an off-site recreational injury simply because the employee was being paid when it occurred. Wilson at 50. But in Wilson the court did not even reach the question of whether exception (b) applied because the activity did not arise out of and within the scope of employment. In other words, because benefits were not "otherwise payable" under paragraph 7, there was no reason to consider the exceptions.

 Workers' compensation law was "intended to place upon industry the losses sustained by employees resulting from injuries arising out of and in the course of employment and, consequently, the law should be liberally construed so as to effectuate its purpose and humane design. The law is intended to extend its benefits to the largest possible class." *James v. CPI Corp.*, 897 S.W.2d 92, 94 (Mo.App. E.D.1995) (citation omitted).

Guided by the foregoing instruction, the Court concludes that the Commission did

not err in its plain meaning application of section 287.120.7(b). Point denied.

## Conclusion

The decision of the Commission is affirmed.

LAWRENCE E. MOONEY, P.J. concurs.

KURT S. ODENWALD, J. dissents in separate opinion.

KURT S. ODENWALD, Judge.

I respectfully dissent. I agree with the majority that the record before us contains competent and substantial evidence to support the Commission's finding that Miles' injuries were due to an accident arising out of and in the course of Miles' employment, and that Miles' injuries were caused by his participation in a voluntary recreational activity. However, the decision of the Commission should be reversed because Miles' injuries are not compensable under the forfeiture provisions of Section 287.120.7. The Commission misapplied the law in holding that the forfeiture of benefits did not apply because Miles was on a paid break when he participated in the recreational activity causing his injuries.

## Historical Background

Before addressing the particular issue in controversy, I believe it will be helpful to review briefly the developments in the area of employer liability for employee injuries sustained while participating in recreational activities. In *Seiber v. Moog Auto., Inc.*, 773 S.W.2d 161 (Mo.App.1989), *superseded by statute as stated in Jones v.*

---

**3.** We appreciate the dissent's concern that a strict construction of the statute could lead to inconsistent results. But this court's role is to interpret a law as the legislature promulgated it, not to unilaterally rewrite the law to conform to our perception of how the legislature *should have* written it. If lawmakers truly meant "for" rather than "while," then they can amend the statute accordingly. Such action is within their authority, not ours.

*Trans World Airlines, Inc.*, 70 S.W.3d 468 (Mo.App. W.D.2001), this Court held that an injury sustained by an employee while playing basketball during an unpaid lunch period was compensable where the facts showed that the recreational activity had become a regular incident of employment. In reaching its decision, this Court reviewed case law from Missouri and other jurisdictions that addressed the specific issue of whether employee injuries suffered during recreational activities were compensable under a system of workers' compensation. *Seiber*, 773 S.W.2d at 163–64. Considering various factors, this Court concluded that the employer in *Seiber* had acquiesced to the playing of basketball to such an extent that the recreational activity had become a regular incident of employment, and therefore, the employee's injury was compensable. *Id.* at 164. However, this Court acknowledged the effect its decision would likely have on expanding coverage for injuries under the workers' compensation system and the corresponding increase in costs, and expressed concern that employers might restrict or forbid recreational activities as a means to reduce the costs of workers' compensation. *Id.* The Court noted that legislative action could be a possible response to its decision. *Id.*

The year following the *Seiber* decision, the Missouri legislature amended the workers' compensation statutes by enacting Section 287.120.7 RSMo 1990, a provision that significantly limited the compensability for injuries sustained by an employee while engaged in a voluntary recreational activity. Since its enactment, only a few cases have addressed the issue of compensability for injuries under Section 287.120.7. It is with this background that we review the appeal before us.

### Discussion

The relevant facts are not in dispute. Miles, a union employee, sustained injuries while playing basketball at his place of employment during a paid break period. The parties agree that this conduct was a voluntary recreational activity. Section 287.120.7 provides for the forfeiture of worker's compensation benefits for injuries sustained by an employee while engaged in a voluntary recreational activity. Our inquiry is whether the provision of sub-paragraph (b) of Section 287.120.7 allows Miles to recover worker's compensation benefits as an exception to the general forfeiture provision.

Whether Miles' injuries are compensable under the statutory framework of Missouri's Worker's Compensation statutes is a question of law reviewed *de novo* by this Court. "[We] independently review questions of law for correctness without deference to the Commission's final award." *Honer v. Treasurer of State*, 192 S.W.3d 526, 529 (Mo.App. E.D.2006).

The majority holds that the forfeiture of benefits provided under Section 287.120.7 does not apply because Claimant was paid wages at the time he participated in the recreational activity. The majority's analysis focuses on the "plain meaning application" of the exception set forth at sub-paragraph (b) of Section 287.120.7; i.e., that Miles "was paid wages ... while participating in such recreational activity...." Under this analysis, the majority concludes that Miles' injuries are compensable because, although he was injured while engaged in a voluntary recreational activity, he received his normal wages while playing basketball on his paid break. The majority holds that Miles' receipt of wages *"while"* he played basketball on a paid break meets the statutory requirements of the forfeiture exception set forth in sub-paragraph (b), and suggests that a broader interpretation of sub-paragraph (b) would

lead us to rewrite this portion of the statute in a manner inconsistent with the plain meaning of the language used by the legislature.

Although it is generally sufficient to engage in a plain meaning interpretation of a statute in order to ascertain the intent of the legislature, circumstances can warrant that judicial inquiry and analysis should proceed beyond that simpler approach. The analytical backdrop for consideration of the question posed by Appellants strongly suggests a narrower interpretation of the exception provided by sub-paragraph (b) than is espoused by the majority opinion when it limits its interpretation of the statute to the plain meaning of the word "while." Appellants' suggested alternative interpretation of sub-paragraph (b), which would apply the exception in those circumstances where an employee received wages *"for"* participating in the recreational activity, is consistent with the overall intent of the 1990 amendment, and does not require this Court to guess or divine the intent of the legislature. While I agree the legislature could have been more precise in its choice of terminology, the acknowledged intent of the legislature to limit employer liability for voluntary recreational injuries should guide our decision in this case. The majority opinion's interpretation of Section 287.120.7(b) contravenes this clear legislative intent.

Missouri's Worker's Compensation Law is a creature of statute; thus, we are guided by the general rules of statutory construction in our interpretation. *Richard v. Missouri Dept. of Corr.*, 162 S.W.3d 35, 39 (Mo.App. W.D.2005). The primary rule of statutory construction is to ascertain the legislature's intent from the statute's language and to give effect to that intent if possible. *Id.* "Insight into the legislature's object can be gained by identifying the problems sought to be remedied and the circumstances and conditions existing at the time of the enactment." *Bachtel v. Miller County Nursing Home Dist.*, 110 S.W.3d 799, 801 (Mo. banc 2003).

Statutory interpretation, when possible, should not occur a vacuum. In interpreting statutes, we must examine the words with a view to the problem the legislature sought to address with the statute's enactment. *Wilson v. Director of Revenue*, 873 S.W.2d 328, 329 (Mo.App. E.D.1994). "We must construe the statute in light of the purposes the legislature intended to accomplish and the evils it intended to cure." *Id.* While recognizing that the primary rule of statutory construction is to determine the legislature's intent by considering the plain and ordinary meaning of the words used in the statute and by giving each word, clause, sentence, and section of the statute meaning, *see State ex rel. Womack v. Rolf,* 173 S.W.3d 634, 638 (Mo. banc 2005), I must note that the legislature's intent also is determined by considering the whole act and its purposes and by seeking to avoid unjust or absurd results. *State ex rel. Killingsworth v. George,* 168 S.W.3d 621, 623 (Mo.App. E.D. 2005). Limiting the analysis of the compensability of Miles' injuries to "the plain and ordinary meaning of the words used" in Section 287.120.7, without greater consideration of the clear legislative intent to limit employer liability for recreational injuries with its post-*Seiber* enactment of Section 287.120.7 yields the type of unjust result we are cautioned to avoid when applying the rules of statutory construction.

Tracing the origins of legislation to a precise idea, thought or event is challenging, and sometimes elusive, to those required to interpret the law. However, swift legislative response to a judicial pronouncement provides reliable indicia of intent and purpose of lawmaking activity.

*Wilson v. Monsanto Co.*, 926 S.W.2d 48, 50 (Mo.App. E.D.1996). We are fortunate, as here we are asked to interpret a statutory provision enacted as an immediate and direct response to this Court's decision in *Seiber*. Arguably, the relevant provision was written at the invitation of this Court, which recognized the additional burdens placed on employers by the decision in *Seiber*. The chronology of the *Seiber* decision and passage of Section 282.120.7 provides us with a reliable indicator of the legislature's purpose and intent to limit employer liability.

As previously discussed, after acknowledging the potential effect of its holding in *Seiber* and noting that such expansion of coverage could result in employers' forbidding recreational activities, this Court stated: "Alternatively, the legislature could restrict coverage in this area." *Seiber*, 773 S.W.2d at 164. The following year, the Missouri legislature did just that by enacting Section 287.120.7 RSMo 1990, which read as follows:

> Where the employee's participation in a voluntary recreational activity or program is the proximate cause of the injury, benefits or compensation otherwise payable under this chapter for death or disability shall be forfeited regardless that the employer may have promoted, sponsored or supported the recreational activity or program, expressly or impliedly, in whole or in part. The forfeiture of benefits or compensation shall not apply when:
>
> (a) The employee was directly ordered by the employer to participate in such recreational activity or program;
>
> (b) The employee was paid wages or travel expenses while participating in such recreational activity or program; or

> (c) The injury from such recreational activity or program occurs on the employer's premises due to an unsafe condition and the employer had actual knowledge of the employee's participation in the recreational activity or program and of the unsafe condition of the premises and failed to either curtail the recreational activity or program or cure the unsafe condition.

This Court discussed the limitation of liability intended by the legislature's subsequent addition of paragraph 7 to Section 287.120 in *Wilson v. Monsanto Co.*, 926 S.W.2d 48 (Mo.App. E.D.1996). While the facts in *Wilson* vary somewhat from the facts of this case, we observed in *Wilson* that the General Assembly amended the statute the year following our decision in *Seiber*, and concluded: "This leads us to concur in employee's statement that these 'amendments were enacted by the legislature to enable employers to limit their liability for recreational injuries.'" *Id.* at 50.

In concluding that the Section 287.120.7(b) exception applies because Miles was paid wages *"while"* participating in the recreational activity at the time he was injured, the majority opinion foregoes the broader analysis that I conclude is appropriate and necessary to determine the intent of the Missouri legislature, given the enactment of Section 287.120.7 on the heels of *Seiber*. By affirming the limited analysis undertaken by the Commission, this Court will require the payment of workers' compensation benefits to employees injured while engaged in purely voluntary recreational activities if the employees collect their normal pay during the time period in which they engage in the recreational activity. This interpretation of Section 287.120.7 fails to limit employer liability as intended by the legislature, and

suggests to employers that forbidding employees to engage in recreational activity during work hours may be the only definite means to limit employer liability for recreational injuries, a negative consequence that concerned this Court in *Seiber*.

This Court rejected such a literal interpretation of Section 287.120.7(b) in *Wilson v. Monsanto Co.* when it declined to hold that an employee paid wages while engaging in a voluntary recreational activity during a break from employment was excepted from the forfeiture provisions. *Id.* at 50. In Wilson, a salaried employee combined his two paid breaks and his one unpaid break in order to have one extended break period. The employee was injured while bicycling during this extended break period. *Id.* at 49. The employee raised two points in his appeal. In his first point, the employee argued that his injury was compensable under the literal reading of Section 287.120.7(b) because "he was on a break from his employment and was paid wages during that time and was engaging in a voluntary recreational activity when he was injured." *Id.* We declined to adopt such an overbroad interpretation of Section 287.120.7(b). *Id.* at 50.

The majority considers *Wilson v. Monsanto Co.* unpersuasive authority on the issue of compensability under sub-paragraph (b) because the Court in Wilson found that the underlying recreational activity at issue did not arise out of and within the scope of employment. The majority asserts that this finding mooted the Court's consideration of sub-paragraph (b).

The majority is correct that this Court rejected the employee's arguments that the recreational activity at issue arose out of and in the course of the employee's employment when it denied employee's second point on appeal. *Wilson v. Monsanto Co.*, 926 S.W.2d at 50. However, that holding followed the Court's analysis of the employee's first point on appeal, which considered the employee's suggested interpretation of Section 287.120.7(b). Before engaging in any discussion of the "scope of employment" issue, the Court summarily rejected the employee's literal interpretation of Section 287.120.7(b): that he was entitled to workers' compensation benefits because he was on a paid break *"while"* engaged in the recreational activity that resulted in his injury. *Id.* I find Wilson to be persuasive authority for the proposition that this Court should apply the broader interpretation that the forfeiture exception under sub-paragraph (b) applies when the employee is being paid wages *"for"* engaging in the recreational activity.

Provisions of an entire legislative act must be construed together and all provisions must be harmonized, if reasonably possible to do so. *Oberreiter v. Fullbright Trucking Company*, 117 S.W.3d 710, 714 (Mo.App. E.D.2003) citing *Kincade v. Treasurer of State of Missouri*, 92 S.W.3d 310, 311 (Mo.App.2002). Construing each of the exceptions set forth in sub-paragraphs (a), (b) and (c) together with the general forfeiture provision of Section 287.120.7 further supports the broader interpretation of sub-paragraph (b) suggested by Appellants. The exceptions set forth under sub-paragraphs (a) and (c) preclude the forfeiture of benefits for recreational injuries where the employer affirmatively has taken some action related to the injury, such as when an employee is directly ordered by the employer to participate in such recreational activity or program or when the employer had knowledge of the unsafe condition on employer's premises that caused the injury. Analyzing each of these exceptions in a manner consistent with the acknowledged legislative intent to limit employer liability re-

quires us to interpret the forfeiture exception of sub-paragraph (b) to preclude the forfeiture of benefits under sub-paragraph (b) where the employer affirmatively has taken some action related to the injury. Such an analysis supports an interpretation that would preclude forfeiture only where the employer has provided the employee with some financial incentive to participate in the recreational activity.

While each of the forfeiture exceptions set forth in under sub-paragraphs (a) and (c) are separate and distinct, the intent of the legislature to preclude forfeiture of benefits under these provisions only when the employer has taken some action in connection with the recreational activity is abundantly clear.

The forfeiture exception provided under sub-paragraph (b) consistently applies the legislature's intent to limit employer liability and harmonizes with the forfeiture exception provided under sub-paragraphs (a) and (c), only if the broader interpretation for sub-paragraph (b) is followed. Sub-paragraph (a) provides that forfeiture shall not apply when "[t]he employee was directly ordered by the employer to participate in such recreational activity or program[.]" Consistent with this forfeiture exception, the reasonable and logical interpretation of sub-paragraph (b) is that an employer's liability under the worker's compensation statutes should not be forfeited when the employer has acted in some manner to persuade or induce an employee to participate in the recreational activity with a financial inducement or reward. Clearly, there are occasions where an employee may participate in a recreational activity without being "ordered to do so" by his employer, but who may be induced to participate by the employer's offered or promised financial incentive.

In the same vein, sub-paragraph (c) precludes forfeiture when the employee's injury occurred on the employer's premises due to an unsafe condition known to but not remedied or otherwise safeguarded against by employer. Applying the exception of sub-paragraph (b) only when an employee is paid *"for"* participating in the recreational activity is the only interpretation consistent with the general forfeiture provisions of Section 287.120.7 and the other two enumerated exceptions, neither of which allow an employer to escape liability where the employer controlled or induced the employee's participation, or was somehow otherwise responsible for the employee's injuries. Unless we interpret the sub-paragraph (b) in this consistent manner, not only does the exception fail to limit an employer's liability for injuries resulting from an employee's participation in a recreational activity as intended, but the exception also is rendered so broad as to make it meaningless. In essence, the exception swallows the rule and defeats the legislature's intended purpose to limit employer liability.

Using a few examples, there is little doubt that the plain language interpretation of sub-paragraph (b) utilized by the majority could easily lead to unreasonable and unjust results. First, as interpreted by the majority, the forfeiture provision of Section 287.120.7 would rarely, if ever, apply to salaried employees, who would be deemed to be "paid wages" in accordance with sub-paragraph (b) if such salaried employees continued to receive their normal salary while engaged in any voluntary recreational activity. This exception could extend to company-sponsored golf outings, softball games or any other recreational events occurring during the hours the employee would normally receive his or her salary. This exception potentially could apply to any employee-organized exercise classes or yoga classes that occur on the employer's premises during normally

scheduled working hours when the employee would normally receive his or her salary. Adopting the majority's interpretation of Section 287.120.7(b) would create an exception rendering the forfeiture provision of Section 287.120.7 potentially inapplicable to all salaried employees and inapplicable to many hourly employees, as well.

The majority's interpretation would promote the further unjust and arbitrary result among hourly employees by allowing an hourly employee to recover worker's compensation benefits for injuries suffered while engaged in a voluntary recreational activity during his or her *paid* fifteen-minute break, but denying those same benefits to an hourly employee injured while engaged in the same voluntary recreational activity during his or her *unpaid* thirty-minute lunch break. Such contrary results border on the absurd and could not have been intended by the legislature. The law favors a statutory interpretation that tends to avert unreasonable results. *Honer,* 192 S.W.3d at 529. The resulting expansion of liability under the majority's interpretation of Section 287.120.7(b) would discourage employers from making it possible for their employees to participate in such activities, the very concern raised by the *Seiber* court.

The language of Section 287.120.7(b) offers additional insight into the legislature's intent. According to Webster's Third New International Dictionary 2568, (unabridged 1981), a wage is "a pledge or payment of [usually] monetary remuneration by an employer [especially] for labor or services [usually] according to contract and on an hourly, daily or piecework basis and often including bonuses, commission, and amounts paid by the employer for insurance, pension, hospitalization, and other benefits[.]" Black's Law Dictionary 1579 (6th ed.1990), likewise defines wages as "compensation given to a hired person for his or her services. Compensation of employees based on time worked or output of production." By definition, then, wages are monies paid for labor or services, not monies paid while on a break from the labor or service for which the employer contracted.

Here, as in *Wilson v. Monsanto Co.,* the spirit and intent of the legislature's enactment of Section 287.120.7 must guide our decision. Miles, a union employee, received his normal hourly pay as part of his union-negotiated break, whether or not he chose to play basketball during that time. Miles received no additional wages or compensation from Lear for his decision to play basketball on his paid break. I decline to interpret Section 287.120.7(b) in such an overbroad manner to impose employer liability for the voluntary recreational activity of this employee. To do so would frustrate the intent of the legislature when it enacted Section 287.120.7, discourage the legislative purpose of limiting an employer's liability for recreational injuries, and be inconsistent with this Court's holding in *Wilson v. Monsanto Co.*

I believe that the proper way to interpret the language of Section 287.120.7(b) so as to give effect to the intent of the legislature to limit employer liability for injuries incurred during voluntary recreational activity would be to allow recovery of benefits only in situations where the employee either suffers his or her recreational injury while being paid for providing actual labor or services, is paid *for* participating in the recreational activity, or receives reimbursement for travel expenses in connection with the recreational activity or program. This interpretation is consistent with the exception of sub-paragraph (a) by holding employers liable for workers' compensation benefits when the employers have acted affirmatively in some manner to entice, induce or persuade

their employees to engage in the recreational activity, and is also consistent with the overall legislative purpose and intent to limit employer liability when the employee, through no actions or inducement of the employer, voluntarily chose to engage in the recreational activity that resulted in the employee's injury. I suggest that allowing compensability under subparagraph (b) when the employee is paid *"for"* engaging in the activity is the only interpretation consistent with the general provisions of Section 287.120.7 and each of its sub-paragraphs. Applying this interpretation does not rewrite Section 287.120.7(b) to conform to any judicial perception of how the legislature should have drafted the provision, but, rather, provides a consistent and harmonious interpretation of Section 287.120.7 and each of its sub-parts that is warranted by the origins and history of the forfeiture provision.

Miles sustained his injuries while playing in a pick-up game of basketball that he chose to play. Miles was not being paid for labor or services, or for playing basketball, nor was he being reimbursed for travel expenses to play basketball on his break. His injuries, therefore, are not compensable under Section 287.120.7.

The Commission misapplied the law and erred in holding that the forfeiture of benefits did not apply because Miles was on a paid break when he participated in the recreational activity causing his injury.

### Conclusion

For these reasons, I would reverse the decision of the Commission and remand this case to the Commission with directions to enter an award in favor of Appellants and denying workers' compensation benefits to Miles.