

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| LISA HOEFT, | ) | No. ED108292 |
| | ) | |
| Respondent, | ) | Labor and Industrial Relations Commission |
| | ) | 2054335 |
| vs. | ) | |
| | ) | |
| TRUE MANUFACTURING COMPANY, | ) | |
| INC., | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| DIVISION OF EMPLOYMENT | ) | Filed: June 23, 2020 |
| SECURITY, | ) | |
| | ) | |
| Respondent. | ) | |

James M. Dowd, P.J., Gary M. Gaertner, Jr., J., and Robin Ransom, J.

Introduction

This unemployment compensation case centers on whether Lisa Hoeft's tardiness to work on June 24, 2019 was her second "absence" as that term is employed in § 288.030's definition of "misconduct" which disqualifies a terminated employee from unemployment compensation benefits if they have two unapproved absences after receiving a written reprimand from the employer. Because the legislature in § 288.030.1(23)(c) specifically distinguished absences from tardiness, we affirm the decision of the Labor and Industrial Relations Commission that Hoeft's

tardiness did not constitute an absence and that Hoeft therefore did not engage in benefits-disqualifying misconduct.

Background

Lisa Hoeft was a factory worker for over three years for True Manufacturing Company (Employer) at its Bowling Green, Missouri facility when, on June 24, 2019, she was terminated after arriving to work one hour late. Between August 2018 and April 2019, Hoeft missed six-and-a-half days of work, absences that her Employer considered to be unapproved. On April 22, 2019, Employer gave Hoeft a written reprimand addressing those absences. On June 6, 2019, Hoeft was absent from work which Employer also deemed to be unapproved. Then on June 24, 2019, after Hoeft notified Employer in advance that she was going to be late to work due to transportation issues and then arrived one hour late, Employer treated this tardiness as Hoeft's second unapproved absence after receiving the April 22, 2019 reprimand and fired her for misconduct.

After a deputy of the Division of Employment Security made an initial administrative determination that Hoeft was disqualified from receiving benefits based on a finding that she was discharged on June 24, 2019 for misconduct connected with work, Hoeft appealed to the Division's Appeals Tribunal which reversed the deputy's decision and found that Hoeft did not engage in misconduct. Employer appealed that decision to the Commission which adopted the decision of the Appeals Tribunal and affirmed.

The Commission focused on the portion of the definition of "misconduct" found at § 288.030.1(23)(c): "A violation of an employer's no-call, no-show policy; chronic absenteeism or tardiness in violation of a known policy of the employer; or two or more unapproved absences following a written reprimand or warning relating to an unapproved absence unless such

2

absences are protected by law; . . . ." While the Commission found that Employer had a policy on attendance that was known to Hoeft, it held that Hoeft's "six absences did not make her an irregular or unreliable employee. She did not violate the policy due to tardiness or leaving early because she did not have irregular or unreliable attendance on those grounds in that she was tardy once during that period and left early once during that period."

The Commission cited the Webster's New World College Dictionary's definition of "chronic" in support of its finding that "[s]ix absences in ten months do not meet the foregoing definition of "chronic" because they were not constant and habitual." *Id.* at 262 (4th ed. 2012) (Chronic: [L]asting a long time or recurring often, continuing indefinitely; perpetual; constant; by habit, custom, etc.,; habitual; inveterate.).

Standard of Review

We will affirm the decision of the Labor and Industrial Relations Commission in an unemployment compensation matter unless the Commission acted without or in excess of its powers, the decision was procured by fraud, the decision is not supported by the facts, or the decision is not supported by sufficient competent evidence in the record. Section 288.210; *Ayers v. Sylvia Thompson Residence Ctr.*, 211 S.W.3d 195, 197-98 (Mo. App. W.D. 2007).

Unless there is fraud, the Commission's findings of fact are conclusive if supported by substantial and competent evidence. *Id.* at 198. Whether the findings are supported by competent and substantial evidence is judged by examining the evidence in the context of the whole record. *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003). If the Commission has reached one of two possible conclusions as to a finding of fact, the reviewing court will not reach a contrary conclusion even if the court could reasonably do so. *Scrivener's Oil Co., Inc. v. Crider*, 304 S.W.3d 261, 267 (Mo. App. S.D. 2010); § 288.210. The reviewing

3

court defers to the Commission's determination regarding witness credibility and weight of the evidence. *Peoples v. ESI Mail Pharmacy Services, Inc.*, 213 S.W.3d 710, 711 (Mo. App. E.D. 2007).

Whether an employee's conduct constitutes misconduct connected with work is a question of law which we review *de novo*. *Finner v. Americold Logistics, LLC*, 298 S.W.3d 580, 584 (Mo. App. S.D. 2009). When reviewing questions of law, we are not bound by the Commission's conclusions of law or its application of the law to the facts. *Difatta Wheaton v. Dolphin Cap. Corp.*, 271 S.W.3d 594, 595 (Mo. banc 2008). "In general, a claimant bears the burden of demonstrating that he or she is entitled to unemployment benefits; however, when the employer claims that the applicant was discharged for misconduct, the burden shifts to the employer to prove the claim of misconduct connected with work." *Stahl v. Hank's Cheesecakes, LLC,* 489 S.W.3d 338, 342 (Mo. App. E.D. 2016) (quoting *White v. Division of Emp. Security*, 431 S.W.3d 583, 586 (Mo. App. W.D. 2014)).

<u>Discussion</u>

Our discussion is framed by two statutory sections. Section 288.030.1(23)(c) defines misconduct:

> (23)    "Misconduct", only as the term is used in this chapter, conduct or failure to act in a manner that is connected with work, regardless of whether such conduct or failure to act occurs at the workplace or during work hours, which shall include:
>
> . . .
>
> (c)    A violation of an employer's no-call, no-show policy; chronic absenteeism or tardiness in violation of a known policy of the employer; or two or more

4

unapproved absences following a written reprimand or warning relating to an

unapproved absence unless such absences are protected by law; . . . .

And § 288.050.2 provides that a claimant "discharged for misconduct connected with the

claimant's work" is disqualified from receiving unemployment benefits.

Employer's appeal is founded on its claim that Hoeft's tardiness on June 24th constituted

her second unapproved absence after she had received a written reprimand on April 22nd and thus

satisfies the definition of "misconduct" under § 288.030.1(23)(c) rendering Hoeft unqualified for

unemployment benefits. In effect, Employer claims that being late or tardy to work is the same

thing as being absent from work. But like the Commission, we reject Employer's expansive

interpretation of § 288.030.1(23)(c).

In interpreting a statute, our primary goal is to ascertain the intent of the legislature by

considering the plain and ordinary meaning of the terms used. *Miles v. Lear Corp.*, 259 S.W.3d

64 (Mo. App. E.D. 2008). Where a statute's plain meaning is clear, courts must resist the urge to

divine a legislative intent that confers some other meaning. *Id.* "If the statutory terms are plain

and clear to one of ordinary intelligence, they are not ambiguous and there is no need to resort to

rules of statutory construction." *Bartareau v. Executive Bus. Products*, Inc., 846 S.W.2d 248,

249 (Mo. App. E.D. 1993). "Absent a statutory definition, words used in statutes are given their

plain and ordinary meaning with help, as needed, from the dictionary." *Greer v. SYSCO Food

Services*, 475 S.W.3d 655, 666 (Mo. banc 2015) (quoting *Am. Healthcare Mgmt., Inc. v. Director

of Revenue*, 984 S.W.2d 496, 498 (Mo. banc 1999) and *Hyde Park Housing Partnership v.

Director of Revenue*, 850 S.W.2d 82, 84 (Mo. banc 1993)). And finally, where the words are

clear and unambiguous, rummaging among the statutory canons of construction to devise a

5

different meaning is impermissible. *State ex rel. Mo. Pac. Railroad Co. v. Koehr*, 853 S.W.2d 925, 926 (Mo. banc 1993).

While Employer has cited a number of dictionary definitions in its quest to equate tardiness with absence, we see no need to resort to such assistance or, as the Missouri Supreme Court cautioned in *State ex rel. Mo. Pac.,* no reason to go "rummaging among the statutory canons of construction," especially when the legislature, in the very same provision before us, demonstrated its clear intent that an absence is different than a tardy. *Id.* In this regard, we adhere to the Supreme Court's guidance from *Hyde Park* that we should look to dictionaries only "as needed." 850 S.W.2d at 84.

Here, in § 288.030.1(23)(c), the legislature not only juxtaposed the terms "absenteeism" and "tardiness," but disjoined them with the disjunctive "or." That two-letter word's "ordinary use is almost always disjunctive, that is, the words it connects are to be given separate meanings." *Loughrin v. United States*, 573 U.S. 351, 357 (2014) (quoting *United States v. Woods*, 571 U.S. 31, 45 (2013)).

We conclude therefore that Hoeft's tardy arrival to work on June 24, 2019 was not an absence and therefore did not constitute the second of two absences after the April 22nd written reprimand that would satisfy the second prong of § 288.030.1(23)(c)'s definition of "misconduct" and disqualify her from benefits. We also conclude that the Commission was correct with respect to the first prong of § 288.030.1(23)(c) that Hoeft was not guilty of chronic absenteeism based on its conclusion that six absences over ten months did not make her an "irregular or unreliable employee" or constitute chronic absenteeism.

Employer's attempt here to expand the scope of benefits-disqualifying misconduct which was already expanded significantly by the legislature in 2014, is not only erroneous but it flies in the face of the legislature's strong public policy declaration set forth in § 288.020:

1. . . . Economic insecurity due to unemployment is a serious menace to health, morals, and welfare of the people of this state resulting in a public calamity. The legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this state require the enactment of this measure, under the police powers of the state, for compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own.

2. This law shall be liberally construed to accomplish its purpose to promote employment security both by increasing opportunities for jobs through the maintenance of a system of public employment offices and by providing for the payment of compensation to individuals in respect to their unemployment.

### Conclusion

Accordingly, we affirm the decision of the Labor and Industrial Relations Commission.

James M. Dowd, Presiding Judge

Gary M. Gaertner, Jr., J., and
Robin Ransom, J. concur.

7