Jack JOHNSON, Appellant,

v.

INDIANA WESTERN EXPRESS, INC., and Treasurer, State of Missouri, as Custodian of the Second Injury Fund, Respondents.

No. SD 29258.

Missouri Court of Appeals, Southern District, Division Two.

April 1, 2009.

Motion for Rehearing or Transfer to Supreme Court Denied April 14, 2009.

Application for Transfer Denied May 26, 2009.

Jerry Kenter, Brianne Niemann, Boyd & Kenter, P.C., Kansas City, MO, for Appellant.

Bill W. Richerson, Sanders, Conkright & Warren, LLP, Overland Park, KS, for Respondents.

JOHN E. PARRISH, Judge.

Jack Johnson (claimant) filed claims for workers' compensation benefits against Indiana Western Express, Inc. (IWX) and the Second Injury Fund. The Labor and Industrial Relations Commission (the commission) denied the claims. This court affirms.

Claimant's Claim for Compensation was directed to an alleged injury sustained February 9, 2006. He asserted that during the course of his employment as an over-the-road truck driver, he was "suddenly, violently and unexpectedly jerked forward when a gust of wind caught a door" he was opening on his trailer; that this resulted in injury to his "[b]ack and body as a whole." The commission found that claimant's injury and disability existed prior to the February 9, 2006, incident; that claimant did not sustain a new injury on that date that arose out of and in the course and scope of his employment.

The commission's Award Denying Compensation affirmed the decision of the administrative law judge. The award and decision of the administrative law judge were attached to and made part of the

commission's award by incorporation by reference. "When the commission's findings include the administrative law judge's award by incorporation by reference, it is reviewed as part of the commission's decision." *Reese v. Coleman*, 990 S.W.2d 195, 197 n. 2 (Mo.App.1999).

■ This court's review addresses only questions of law. *Miles v. Lear Corp.*, 259 S.W.3d 64, 66 (Mo.App.2008). It may modify, reverse, remand, or set aside an award of the commission only (1) if the commission acted without or in excess of its powers; (2) the award was procured by fraud; (3) the facts found by the commission do not support the award; or (4) there was not sufficient competent evidence in the record to warrant the making of the award. § 287.495.1, RSMo 2000. This court defers to the commission on issues of fact. *Miles, supra*. Questions of law are reviewed *de novo*. *Id.*

Claimant began his most recent employment by IWX in November 2005. He had previously worked for IWX from December 2000 through May 2001. After terminating his earlier employment by IWX, claimant bought his own truck and worked as a self-employed driver from 2001 through 2004. In August 2004, he sustained a low back injury while removing chains from a generator he had delivered to a location in Florida. He was asked what he did at that time. He answered, "It was like I twisted around. I think I was jerking the chain off or something. I twisted around and I heard a pop in my back. And that was pretty much it from— you know, pretty much by the end of that deal." Claimant did not work following the August 2004 injury until he began working for IWX in November 2005.

Claimant was treated for his 2004 injury by Dr. Richard Marks in Ft. Worth, Texas. He received epidural injections for pain. He also underwent a "two-level TDR," a transcutaneous disc resection, in April 2005 at the L4–5 and L5–S1 levels.[1] Claimant was last seen by Dr. Marks on June 30, 2005. An MRI had been performed on June 29, 2005. Claimant reported that although the pain and numbness in his lower left extremity had abated post-surgery, pain and spasm tightness in his back continued.

Dr. Marks' report stated that the back pain could be quite debilitating; that it could "leav[e] him down for as long as 2 days at a time." He observed, "[T]he back pain itself as well as muscle spasm tightness is significant, virtually disabling [claimant] from doing his normal work activities." Dr. Marks recommended physical therapy. He requested a follow-up visit. He discussed a need to undergo future surgery, a discectomy and fusion, in order "for any definitive care to be rendered." Claimant did not follow-up with Dr. Marks with respect to the 2004 injury.[2]

Claimant said he started feeling better after his last visit with Dr. Marks; that he was walking for physical therapy. He decided on his own that he was able to work as an over-the-road truck driver and applied for a position with IWX.

The commission based its denial of benefits, in large part, on the testimony of Dr. Jeffrey MacMillan. Dr. MacMillan examined claimant prior to the evidentiary hearing in this case. Dr. MacMillan's

---

1. Claimant explained his surgery as "a two-level TDR, meaning he did two separate procedures on two discs."

2. Claimant visited Dr. Marks in March 2006 after the February 9, 2006, event. Dr. Marks recommended a traction regimen, prescribed an anti-inflammatory, and requested that claimant not work. A follow-up visit was suggested. Claimant did not follow up with Dr. Marks after the March 2006 visit.

opinion was that claimant's medical condition and claimant's need for ongoing treatment was not related to the February 9, 2006, incident. He found no evidence that claimant ever recovered from the August 2004 injury, or that claimant suffered a new injury.

Dr. MacMillan found that the MRI test performed after the 2004 injury and an MRI performed after the 2006 event did not support that a further injury had occurred. Dr. MacMillan explained, "So you have MRIs bracketing the alleged injury but there is really no significant change between those two studies. So, on the second study there is no evidence of a new injury and, typically, there has to be some objective evidence that something happened or something changed."

Dr. MacMillan concluded that claimant's pain was caused by two degenerative discs; that the discs were abnormal prior to February 2006. He explained that pain is often a protective mechanism that does not necessarily mean a new injury has occurred. He said that symptoms of a degenerative condition often "wax and wane" over time. Dr. MacMillan suggested, "[Y]ou got a guy who's been out of work for several months, he has to somehow get back to work and try and support his family and he goes back to work and low [sic] and behold his back hurts as bad as it did after the initial injury."

Dr. MacMillan was asked about a statement in a report he had submitted that stated "[a]lthough [claimant] alleges that his symptoms changed considerably with his February 2006 injury, there is no documentation in the medical record that would suggest he ever truly improved following Dr. Marx's[3] last entry." Dr. MacMillan

was asked the following questions and gave the following answers:

Q. ... When you say "last entry," you mean the entry of June 30th of 2005?

A. Yes.

Q. What is the basis for that opinion, the fact that there is no evidence of any medical treatment with Dr. Marx [sic] or anyone else between June 30th, 2005, and February 9th, 2006?

A. Well, [claimant] says that he was able to go back to work and he had some backaching and stiffness, particularly after he sat for long periods of time, and so on. But there is nothing in the record that documents that fact.

Q. Is that significant to your opinion; I mean, is your opinion based solely on the fact that there is no medical documentation that there was ever a change in his condition?

A. No, not at all. It's based on the fact that there is no change in the MRI and if we are in a situation where you have a patient who goes in to the doctor and says I'm better and I'm ready to return to work and then he has a period of time where he receives no ongoing treatment and then he hurts himself at work and has an MRI which documents a significant change or an objective change in his spine, we say, okay, here is a guy who appears to have been better but then he goes and hurts himself and now he has an objective change in his MRI.

In this situation, we have a guy whose last medical entry he's disabled and then we have no idea what happens and he goes for a very short period of time and

3. Dr. MacMillan's testimony was given by deposition. The name "Dr. Marx" appears in a number of places throughout the deposition. This court infers that the "Dr. Marx" referred to in the deposition transcript is intended to be Dr. Richard Marks who treated claimant in Ft. Worth, Texas.

all of a sudden he comes back with a new alleged injury, but there is no change in his MRI. So there is no objective evidence that anything happened between his first treatment and the second injury. So, the assumption that you have to make is that there is no new injury. This is all part—it's all a continuation of the first injury.

Dr. MacMillan acknowledged that this was different than cases in which you only have an MRI performed after the event from which an injury is claimed; that in those instances, it is necessary to surmise if there has been a change in a patient's condition. He continued, "But in this case you have a different scenario. You have somebody who has clearly documented severe symptoms before the alleged injury. You have very similar symptoms after the alleged injury, and you have an MRI before the alleged injury that shows degenerative changes, and you have a virtually indistinguishable MRI after the alleged injury. So there is no objective evidence that anything changed."

Dr. MacMillan was asked, "[I]n looking at these films that you reviewed of this patient, do you see anything on the subsequent studies to indicate to you that there was a change in the pathology of his spine after February 9th, 2006, that did not exist prior to that date?" Dr. MacMillan answered, "No." Dr. MacMillan's opinion was that the event of February 9, 2006, was not the primary or prevailing factor in causing claimant's need for additional medical treatment.

Dr. MacMillan was asked if he knew if the doctor with whose opinion he disagreed, Dr. Stuckmeyer, was currently performing orthopedic surgery. He answered that Dr. Stuckmeyer was not currently

performing orthopedic surgery and had not done so for several years.

The commission, in adopting the administrative law judge's findings, concluded:

It is clear that Drs. MacMillan and Stuckmeyer differ as to the causation of claimant's current complaints. Dr. MacMillan finds it unrelated to any injury in February of 2006, and Dr. Stuckmeyer finds that the injury is related to such incident. Consequently, the major issue presented by the parties is whether claimant's current physical condition was caused by his alleged accident. Indeed, there is no evidence to dispute that an incident occurred on February 9, 2006, as claimant describes, when a gust of wind caught the door he was trying to open and jerked him forward. Claimant alleges that that incident caused his current complaints. Thus, the issue of accident rises or falls with the determination of causation. Indeed, § 287.020, [4] in effect at the time of this injury, states that: "[a]n injury by accident is compensable only if the accident was the prevailing factor in causing both the resulting medical condition and disability. 'The prevailing factor['] is defined to be the primary factor, in relation to any other factor, causing both the resulting medical condition and disability.['] 287.020.3(1), RSMo. Additionally, an accident must produce "at the time objective symptoms of an injury." § 287.020.2. Moreover, "[i]n determining compensability and disability, where inconsistent or conflicting medical opinions exist, objective medical findings shall prevail over subjective medical findings. Objective medical findings are those findings demonstrable on physical examination or by appropriate test or diagnostic procedures." § 287.190.6(2).

4. References to statutes are to RSMo Supp. 2005 unless otherwise stated.

The commission found "from the evidence" that claimant had a significant back injury that preexisted the accident that occurred February 9, 2006; that the ultimate decision regarding compensability depends on the determination of which doctor was correct with respect to whether claimant's current condition was caused by the February 9, 2006, incident.

The commission found, again adopting the administrative law judge's findings:

> Based upon all of the evidence in this case, [the commission] conclude[s] that claimant did not sustain an injury by accident arising out of and in the course and scope of his employment on February 9, 2006, and that his current physical complaints were not caused by the event of February 9, 2006. There is no evidence to dispute claimant's testimony that an event occurred on that date; however, [the commission] find[s] that claimant sustained no new injury that caused his current physical complaints. Indeed, the evidence is that his actual physical condition, as determined by objective findings, remains virtually identical to what it was following his surgery from his August 20, 2004, injury.

The commission found that claimant failed to meet his burden of proof to prove his current physical condition was caused by the event of February 9, 2006.

 Claimant asserts one point on appeal. He contends that the commission erred in entering an award of no compensation; that the facts found by the commission do not support an award of no compensation. Claimant contends that "the accident sustained by [him] on February 9, 2006[,] was the prevailing factor in causing both the resulting medical condition and disability to the low back and body as a whole." Claimant refers to four aspects of the evidence he presented as support for his claim of error. He contends that (A) he had recovered sufficiently from his prior back injury to enable him to return to work as a truck driver in the same capacity as before the prior injury; (B) he was not disabled at the time of the incident on February 9, 2006; (C) he had passed a DOT physical examination taken at the request of IWX and had been found not to be disabled, and that he met all requirements of the DOT to drive an over-the-road truck without restrictions; and (D) where there exists a pre-existing but non-disabling condition, a subsequent accident that results in a disability to the injured employee is the prevailing factor in causing any resulting medical condition and additional disability.

 Claimant's statement of facts is a summary of testimony of three witnesses and a summary of Dr. James Stuckmeyer's report that was admitted in evidence. With respect to differences in the testimony on which claimant relies and the testimony on which the commission based its findings, "[t]he [c]ommission is charged with passing upon the credibility of witnesses, and it may disbelieve testimony of a witness even though no contradictory or impeaching evidence is presented." *Gordon v. City of Ellisville,* 268 S.W.3d 454, 458 (Mo.App.2008). This court defers to the commission on issues of fact. *Miles v. Lear Corp., supra.* Likewise, with respect to conflicting testimony of expert witnesses, the commission is free to believe whichever expert it chooses to believe. *Gordon, supra,* at 461. It is within these parameters that issues raised on appeal are addressed.

Further, as explained in *Gordon,* since the effective date of the 2005 changes to The Workers' Compensation Law, new and significantly different standards must be applied in determining the compensability of a claim.

Case law preceding the 2005 amendments to the Worker's [sic] Compensation Law indeed permitted a claimant to recover benefits by establishing a direct causal link between job duties and an "aggravated condition." *See Rono v. Famous Barr,* 91 S.W.3d 688, 691 (Mo. App. E.D.2002). However, since *Rono* was decided, the legislature amended Section 287.020, changing the criteria for when an injury is compensable. In particular, the legislature struck out language stating that an injury is deemed to arise out of and in the course of employment where it is reasonably apparent that the "employment" is a "substantial" factor in causing the injury, "can be seen to have followed as a natural incident of the work" and "can be fairly traced to the employment as a proximate cause." *See* S.B. Nos. 1 & 130, section A 93rd Gen. Assem., 1st Reg. Sess. (Mo.2005). . . .

Under the current statute, a work injury "is compensable *only* if the accident was the prevailing factor in causing both the resulting medical condition and disability." Section 287.020.3 (emphasis added). Further, Section 287.800 RSMo Supp.2006 requires this Court to strictly construe the provisions of the Worker's [sic] Compensation Law. Thus, we must limit our consideration of Claimant's claim for benefits to the standard contained in the current version of section 287.020.3 . . . .

*Id.* at 459. The commission recognized this, pointing out that § 287.190.6(2) requires that "where inconsistent or conflicting medical opinions exist, objective medical findings shall prevail over subjective medical findings."

Claimant's arguments (A) and (B), that he had sufficiently recovered from his prior back injury so that he was able to return to work as an over-the-road driver and that claimant was not disabled at the time of the February 9, 2006, incident, are contrary to the facts found by the commission. The commission found the medical evaluation of Dr. MacMillan to be credible and relied on those findings in denying claimant workers' compensation benefits. Dr. MacMillan found that claimant's condition following the February 9, 2006, occurrence and claimant's need for ongoing medical treatment were not related to that incident. Dr. MacMillan found no evidence that claimant had recovered from the August 2004 injury; that claimant's condition after February 9, 2006, was unchanged from what it had been before the occurrence on that date. He found the MRI test that was conducted prior to the February 9, 2006, event was "virtually indistinguishable" from the MRI test conducted after that incident; that there was "no significant change" between the two MRI tests that bracketed the February 9, 2006, event. He diagnosed the cause of claimant's pain to be two degenerative discs; discs that were abnormal prior to February 9, 2006.[5]

Dr. MacMillan's assessment was consistent with the earlier observations of Dr. Marks, the surgeon who performed surgery on claimant after the 2004 injury. After the surgery, Dr. Marks found abnormalities at claimant's L4–5 disc and L5–S1 disc of the lumbar spine. Dr.

---

**5.** Compare *Gordon v. City of Ellisville, supra,* that observed aggravation of a preexisting condition arising out of and in the course of employment had been compensable prior to the 2005 amendments to § 287.020, but that the current version of § 287.020 restricts compensation to injuries in which the work accident was the *prevailing factor* in causing the resulting medical condition and disability. *Gordon,* 268 S.W.3d at 459. Dr. MacMillan did not find that the February 9, 2006, occurrence produced any injury that was the prevailing factor in any disability claimant suffered.

Marks concluded at that time that claimant was virtually disabled from his normal work activities; that claimant would need a discectomy and fusion for definitive care.

Claimant argues that Dr. Mac-Millan's evaluation differed from that of Dr. Stuckmeyer; that Dr. Stuckmeyer's evaluation determined claimant sustained a disabling injury from the event that occurred February 6, 2006, that entitled claimant to benefits. The commission did not agree. It concluded that Dr. MacMillan's evaluation was persuasive; that it was supported by the objective analysis of the MRI studies. That determination is binding on this court in that credibility regarding competing medical theories is a decision to be made by the commission. *Baird v. Ozarks Coca–Cola/Dr. Pepper Bottling Co.*, 119 S.W.3d 151, 154 (Mo.App. 2003). "When the right to compensation depends on the acceptance of one of two competing medical theories, the issue is one of fact and the [c]ommission's finding will not be disturbed unless the [c]omission acted unreasonably in accepting testimony that was not substantial or decided the issue contrary to the overwhelming weight of the evidence." *Keener v. Wilcox Elec., Inc.*, 884 S.W.2d 744, 746 (Mo.App.1994).

This court does not find that the commission acted unreasonably, that the testimony it accepted was insubstantial, or that the commission decided the issue contrary to the overwhelming weight of the evidence. The evidence did not require a determination that claimant had recovered sufficiently from his prior injury to perform the same kind of work that he had previously performed when he started his last employment by IWX. The evidence was sufficient for the commission to find that on February 9, 2006, claimant remained disabled as a result of his prior injury.

Claimant's argument (C) is that because he passed a DOT physical that was taken at the request of IWX prior to his last employment by IWX and found to meet the conditions required for a commercial license, the facts found by the commission do not support an award of no compensation. Claimant took a physical examination to determine his fitness as a commercial driver in November 2005. It was conducted by a Dr. Morris in Ft. Worth, Texas. He passed the examination and was certified to drive a commercial vehicle. Claimant contends this was *prima facie* evidence that he was not disabled prior to February 2006.

Claimant cites no authority for his argument that the passing of the DOT physical examination required a finding other than that made by the commission. This court finds nothing in the record that supports claimant's argument that the commission was required to find that because claimant passed the requisite physical examination for licensure, he no longer suffered from his prior disability.

Finally, claimant contends in argument (D) that the facts found by the commission do not support an award of no compensation because claimant's prior injury was non-disabling; that, therefore, the February 9, 2006, incident disabled claimant so that its consequences were the prevailing factor that caused his subsequent physical disability. There was sufficient medical evidence, as previously discussed, from which the commission could find that the February 9, 2006, incident was not the prevailing factor in the disability claimant experienced after that date. As noted, *supra*, under current law, in order for an event that arises out of and in the course of one's employment to entitle an employee who has a prior disability to additional benefits, the event must be a prevailing factor that results in further disability. It

is not sufficient that the event simply aggravates a preexisting condition. § 287.020; *Gordon v. City of Ellisville*, 268 S.W.3d at 459.

Claimant's point on appeal is denied. The commission's award of no compensation benefits is affirmed.

LYNCH, C.J., and RAHMEYER, J., concur.