

# In the
# Missouri Court of Appeals
# Western District

| | |
|---|---|
| RANDOLPH COUNTY, MISSOURI, | ) |
| | ) |
| Appellant, | ) WD76709 |
| | ) |
| v. | ) OPINION FILED: July 29, 2014 |
| | ) |
| TAMMY MOORE-RANSDELL, | ) |
| | ) |
| Respondent. | ) |

**Appeal from the Labor and Industrial Relations Commission**

Before Division Two: Gary D. Witt, Presiding Judge, Lisa White Hardwick, Judge and
Alok Ahuja, Judge

Randolph County appeals the Labor and Industrial Relations Commission's final award of workers' compensation benefits to its former employee, Tammy Moore-Ransdell ("Moore-Ransdell"). Randolph County contends the Commission erred in concluding that Moore-Ransdell suffered a compensable injury because: (1) the injury came from a hazard or risk to which she was equally exposed in her normal nonemployment life; and (2) the accident at work was merely a triggering or precipitating factor and not the prevailing factor in causing her resulting medical condition and

disability. Because the Commission's determinations were supported by competent and substantial evidence and were not against the weight of the evidence, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

Moore-Ransdell, age fifty at the time of the accident, worked for Randolph County for ten years. As a "deeds clerk" in the Assessor's office, Moore-Ransdell worked with "property records cards," which were stored in filing cabinets. Her medical record as explained through her History and Physical at Boone Hospital Center indicates that she was "well with regard to her low back and lower extremities until Tuesday, February 26, 2008."

On that day, Moore-Ransdell was updating the property records cards. One of the file folders she needed was in the back of the bottom file drawer, which she described as "extremely full" and "jammed up." Because of defects in the filing system and the location of the file cabinet, Moore-Ransdell had to squat down and twist to remove a file from the tightly jammed bottom file drawer. She squatted down, reached into the back of the file drawer, and twisted her body as she tried to remove the file. She immediately experienced extreme pain in her low back. She could barely stand up and had difficulty walking. Moore-Ransdell finished working the rest of the day but had too much low back pain the following day to get out of bed.

On March 1, 2008, Moore-Ransdell spoke to her supervisor about her injury. Her supervisor referred her to Kevin D. Komes, M.D., an orthopedic surgeon, for evaluation of her back pain for workers' compensation purposes. The record indicates that Moore-

Ransdell told Dr. Komes that she had low back pain, pain in her buttocks, and numbness in her entire left leg, all of which began immediately after the file cabinet incident.

In April 2008, Moore-Ransdell filed a claim for workers' compensation benefits. Randolph County denied her claim and refused to authorize further medical treatment.

Moore-Ransdell then sought medical treatment on her own. Her primary care physician referred her to Thomas R. Highland, M.D. Dr. Highland is a board-certified orthopedic surgeon and professor who had been in practice for fifteen years as of the time of the hearing. He specializes "in the treatment of the spine, including cervical, thoracic, and lumbar spine." In examining Moore-Ransdell, Dr. Highland noted that she had diminished sensation in her left leg, buttock and back pain on the left, right leg pain, and tenderness in her low back. He initially referred her for physical therapy and pain management. She participated in physical therapy and received epidural steroid injections, nerve root injections, and facet blocks, but the pain worsened.

In July 2008, Moore-Ransdell underwent a lumbar discogram, which is a test that places a needle into the disc itself and injects a dye. According to Dr. Highland, the discogram showed degeneration in the discs at L3-4, L4-5, and L5-S1, which are the bottom three discs in the back. The discogram reproduced the pain that Moore-Ransdell had been having in her low back and down her leg. Dr. Highland recommended a three-level fusion of the discs. Moore-Ransdell did not have surgery at that time but attempted a more conservative treatment plan of further therapy, continued steroid injections and pain medication. Despite the additional pain management, she was unable to tolerate the pain.

In August 2010, Moore-Ransdell returned to Dr. Highland and reported that the steroid injections had given her only short-term relief and that she was still having back pain and numbness and tingling in her left leg. She was having difficulty living with the pain. Dr. Highland took an x-ray and noted that the three problematic discs had gotten worse, particularly at the L5-S1 level. An MRI showed further degeneration at L3-4 and L4-5, inflammatory changes at L5-S1, increasing bulging of the L3-4 disc, and increasing compression of the nerves at that level. In examining Moore-Ransdell, Dr. Highland noted that she was experiencing more loss of sensation in her left leg than she had in 2008 and that she had a slight weakness to the dorsiflexion of the left foot, which she did not have in 2008.[1]

Dr. Highland again recommended that Moore-Ransdell undergo surgery to treat her injury. In October 2010, he wrote in a letter that Moore-Ransdell had "continuing degeneration of all three segments in her back which were the source of her pain." He stated, "I clearly feel that her continuing symptoms and her need for surgery are directly related to the work injury in February 2008." He stated that his impression of Moore-Ransdell's condition was: "(1) Acute lumbar strain in February 2008; (2) Internal disc disruption to L3-4, L4-5 and L-5-S1 secondary to work injury in February 2008; (3) Need for anterior lumbar fusion L3-4, L4-5 and L5-S1 secondary to work injury in February 2008."

In November 2010, Moore-Ransdell underwent anterior fusion surgery. Moore-Ransdell's back and leg pain improved post surgery.

---

[1]Dr. Highland explained that "dorsiflexion" is the act of raising one's toes toward the ceiling.

On October 29, 2012, a hearing was held before an Administrative Law Judge (ALJ) on Moore-Ransdell's workers' compensation claim. During the hearing, Moore-Ransdell testified regarding the February 26, 2008 accident, the pain she felt afterwards, the treatment she received, and her condition after the anterior fusion surgery. Presently, she is unable to sit comfortably for more than forty-five to fifty minutes and to stand for more than thirty to forty minutes without having increasing pain in her low back and difficulty walking. She is prescribed Vicodin for pain, medication for nerve pain, muscle relaxers, and Cymbalta for depression.

In addition to her testimony and medical records, Moore-Ransdell offered Dr. Highland's deposition testimony and disability rating report. On direct examination, Dr. Highland testified in part:

> Q.     All right. Let me ask you a hypothetical question, Doctor. If you would assume that the history that Ms. Ransdell gave you when you first saw her was true and correct, that is, that she had back pain and leg pain after squatting down to get a file – something out of a file cabinet and twisting, and that she did that on about February 26th, 2008. And then you saw her – at the times that you saw her, do you have an opinion based on reasonable medical certainty as to whether or not that incident caused the conditions that you found when you examined her?
>
> A.     Yes.
>
> Q.     What is your opinion?
>
> A.     ***That the injury caused the condition that I treated her for.***
>
> Q.     Okay. All right. And do you have an opinion as to whether or not that injury that she described is what necessitated this course of treatment and surgery that you have now performed?
>
> A.     Yes.

5

Q.     And what is that opinion?

A.     *That it caused the injury and the problem for which we eventually did do the surgery.*

Q.     All right.  And in your opinion, the surgery that was performed, was that the appropriate medical procedure to take in Ms. Ransdell['s] case?

A.     Yes.

On cross-examination, Dr. Highland agreed with defense counsel that Moore-Ransdell had a degenerative back before the February 26, 2008 accident.  He also agreed that aging and normal activities of daily living can cause such degenerative problems to progress over time.  Dr. Highland testified that, when he re-evaluated Moore-Ransdell in August 2010, he found that she had increasing stenosis and continuing degeneration of the three discs, which were the source of her pain.  He agreed that, without her pre-existing disc degeneration, the lumbar strain she suffered at work on February 26, 2008, would not have necessarily required the three-level fusion procedure that he performed.  Dr. Highland explained that the lumbar strain was an "injury to the muscles and ligaments, which is *usually* a more short-term issue" and that "the continued pain was from the deteriorating discs that she had" (emphasis added).  Dr. Highland answered affirmatively when asked whether the work accident "triggered a pain from the underlying discs" and when asked whether he had to "address the underlying condition to address that pain."

Dr. Highland also was asked on cross-examination about the factors that contributed to Moore-Ransdell's medical condition.  Dr. Highland testified that one factor

6

was the underlying disc degenerative process, one was "possibly" her smoking, and the third was lumbar strain from the incident at work. Dr. Highland reiterated his medical opinion that *"in this patient," the lumbar strain "was the primary factor" of the overall condition*. Dr. Highland also testified that the workplace incident caused the degeneration of the spine to "become symptomatic."

On redirect examination, Dr. Highland was asked two questions:

Q.      Your testimony before – *the prevailing cause, I think, is the term we use now, of this condition that she had when she came to see you, that's caused by this squatting down and twisting.* Would that be your opinion?

A.      Yes.

Q.      All right. Would that be based on reasonable medical certainty?

A.      Yes.

(Emphases added.)

Dr. Highland determined that she reached maximum medical improvement in November 2011 and that she should be permanently restricted from lifting over ten pounds, frequent bending, prolonged sitting, and prolonged standing. Dr. Highland opined that Moore-Ransdell was twenty-five percent permanently and partially disabled as a result of the February 2008 work injury.

At the hearing, Randolph County offered the deposition testimony and reports of Michael C. Chabot, D.O., an orthopedic spine surgeon who performed a medical evaluation on Moore-Ransdell in October 2008 on behalf of Randolph County. Dr. Chabot diagnosed Moore-Ransdell with back pain and a history of back strain.

7

The ALJ found that Moore-Ransdell sustained her burden of proof that the February 26, 2008 work-related accident caused her low back pain, subsequent surgery, and related medical treatment. Specifically, the ALJ found credible Moore-Ransdell's testimony regarding how the accident occurred and the immediate and intense low back pain that resulted. The ALJ also cited Dr. Highland's opinion that the February 26, 2008 accident caused Moore-Ransdell's low back condition and need for treatment, including surgery. The ALJ examined the content of Dr. Chabot's analysis and stated that she found Dr. Highland's testimony more persuasive than Dr. Chabot's.

The ALJ determined that Randolph County was liable to Moore-Ransdell for medical expenses in the amount of $130,574.00, temporary total disability benefits for 100 weeks, and permanent partial disability benefits based upon twenty-five percent disability to the body as a whole.[2] Randolph County filed an application for review with the Commission. The Commission issued a final award affirming and incorporating the ALJ's findings and decision. Randolph County appeals.[3]

## STANDARD OF REVIEW

This court will not disturb the award in a workers' compensation case unless the Commission acted in excess of its powers, the award was procured by fraud, the facts found by the Commission do not support the award, or there was not sufficient competent

[2]Moore-Ransdell had also sought payment for future medical expenses. The Commission found that she failed to sustain her burden of proof with regard to her need for future medical treatment. Moore-Ransdell does not appeal this finding.

[3]Moore-Ransdell asks us to dismiss both of Randolph County's points on appeal because of briefing deficiencies. While we have discretion to dismiss an appeal based upon briefing deficiencies, we usually do not exercise such discretion "unless the deficiency impedes disposition on the merits." *Maskill v. Cummins*, 397 S.W.3d 27, 31 (Mo. App. 2013) (internal quotation marks and citation omitted). This is because we prefer to decide a case on its merits. *Id*. Despite its deficiencies, we are able to ascertain Randolph County's arguments from its brief; therefore, we elect to review Randolph County's claims to provide a determination on the merits.

8

evidence in the record to support the award. § 287.495.1.[4] We review questions of law *de novo*. *Tillotson v. St. Joseph Med. Ctr.*, 347 S.W.3d 511, 516 (Mo. App. W.D. 2011) (citation omitted). In deciding whether there is sufficient competent and substantial evidence to support the Commission's award, we examine the evidence in the context of the whole record. *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222-23 (Mo. banc 2003). We recognize that the Commission was free to believe or disbelieve any evidence, and we defer to the Commission's credibility determinations. *Clark v. Harts Auto Repair*, 274 S.W.3d 612, 617 (Mo. App. W.D. 2009) (citation omitted). As the claimant, Moore-Ransdell bore the burden of proving all essential elements of her workers' compensation claim. *Bond v. Site Line Surveying*, 322 S.W.3d 165, 170 (Mo. App. W.D. 2010) (citation omitted).

## ANALYSIS

Randolph County's two points on appeal allege error in the Commission's finding that Moore-Ransdell suffered a compensable injury. Section 287.020 governs the determination as to whether an employee has sustained a compensable injury from a work-related accident. *Tillotson*, 347 S.W.3d at 517. Section 287.020.2 defines an accident for workers' compensation purposes:

> The word "accident" as used in this chapter shall mean an unexpected traumatic event or unusual strain identifiable by time and place of occurrence and producing at the time objective symptoms of an injury caused by a specific event during a single work shift. An injury is not compensable because work was a triggering or precipitating factor.

---

[4]All statutory references are to the Revised Statutes of Missouri 2000 as currently supplemented, unless otherwise indicated.

9

Section 287.020.3(1) requires that the injury must have "arisen out of and in the course of employment." For an injury by accident to be compensable, the accident must be "the prevailing factor in causing both the resulting medical condition and disability." *Id*. "The prevailing factor" is the "primary factor, in relation to any other factor, causing both the resulting medical condition and disability." *Id*. Section 287.020.3(2) further provides that an injury is deemed to arise out of and in the course of employment only if:

> (a) It is reasonably apparent, upon consideration of all the circumstances, that the accident is the prevailing factor in causing the injury; and

> (b) It does not come from a hazard or risk unrelated to the employment to which workers would have been equally exposed outside of and unrelated to the employment in normal nonemployment life.

These provisions are to be strictly construed, and the Commission is to weigh the evidence "impartially without giving the benefit of the doubt to any party." § 287.800.

**Point One**

Randolph County contends in its first point that the Commission acted in excess of its authority in compensating Moore-Ransdell because her injury did not arise out of her employment, in that her injury came from a hazard or risk to which she was equally exposed in normal nonemployment life. Specifically, Randolph County argues that the risk was simply the act of bending over, which was not unique to Moore-Ransdell's job and was nothing more than a risk of everyday life to which she was equally exposed in her normal nonemployment life.

For an injury to arise out of employment under Section 287.020.3(2)(b), there must be "a causal connection between the injury at issue and the employee's work

10

activity." *Johme v. St. John's Mercy Healthcare*, 366 S.W.3d 504, 510 (Mo. banc 2012). A causal connection does not exist if the injury "merely happened to occur while working but work was not a prevailing factor" and the risk involved was one to which the worker would have been equally exposed in normal nonemployment life. *Miller v. Mo. Highway & Transp. Comm'n*, 287 S.W.3d 671, 674 (Mo. banc 2009). The injury must have occurred because the risk was due to some condition of the worker's employment. *Id.* In other words, the employee must have been injured because she was at work and not simply while she was at work. *Pope v. Gateway to West Harley Davidson*, 404 S.W.3d 315, 320 (Mo. App. E.D. 2012).

Applying these principles, the Supreme Court in *Miller* found that an employee whose knee popped while he was walking briskly on an even road surface to retrieve materials needed for his job as a road crew worker failed to prove a causal connection between his work activity and his injury. *Id.* at 672-74. The court noted that the injury-causing risk -- walking -- was one to which the employee would have been equally exposed in normal nonemployment life and that "[n]othing about work" caused the employee's knee to pop. *Id.* at 674. Thus, the court determined that, while the employee's injury may have arisen during the course of his employment because it occurred while he was at work, it did not arise out of his employment under Section 287.020.3(2)(b). *Id.*

Similarly, in *Johme*, 366 S.W.3d 504, the Supreme Court determined that an employee who was injured in an office kitchen while making coffee when she turned and twisted her ankle, which caused her foot to fall off her high-heeled shoe, failed to show a

causal connection between her work and her injury. The court noted that "the evidence did not link her act of making coffee as the cause of her injury and fall," and the only connection her turning, twisting her ankle, and falling off her shoe had to her work activity was that it occurred while she was at work. *Id.* at 511. Because the employee's risk of injury from turning, twisting her ankle, and falling off her shoe was a risk to which she would have been equally exposed in her normal nonemployment life, the court held that, under section 287.020.3(2)(b), her injury was not compensable. *Id.* at 511-12.

Randolph County argues that, like the risk of injury from the employee's walking in *Miller* and from the employee's turning, twisting her ankle, and falling off her shoe in *Johme*, the risk of injury from Moore-Ransdell's bending over was one to which she was equally exposed outside of work. Randolph County mischaracterizes the risk in this case. The evidence shows that Moore-Ransdell did not suffer the low back injury after merely "bending over" at her place of employment. Rather, she credibly testified that, in attempting to perform her work activity of updating property cards, she squatted down to pull out a lower file drawer that was "extremely full," reached into the back of the file drawer, and twisted to remove the file from the tightly packed drawer. In doing so, she experienced immediate extreme pain in her lower back.

Unlike in *Miller* and *Johme*, the evidence here specifically linked Moore-Ransdell's work activity as the cause of her low back injury. She was required to update property cards as one of her primary job duties. Due to Randolph County's storing the property cards in full file drawers, Moore-Ransdell had to squat down, reach into the back of a file drawer, and twist to remove the file containing the property card that she

12

needed to update. Moore-Ransdell injured her back because she was at work, not merely while she was at work. *See Pope*, 404 S.W.3d at 320. Her risk of injury from squatting down, reaching into the back of a file drawer, and twisting to remove files from full file drawers was a risk to which she would not have been equally exposed in her normal nonemployment life.

Point One is denied.

## Point Two

In Point Two, Randolph County contends that the Commission's determination that Moore-Ransdell suffered a compensable injury was not supported by competent and substantial evidence and was against the weight of the evidence because the medical evidence showed that her work-related accident was merely a triggering or precipitating factor and not the prevailing factor in causing her medical condition and disability.

"Medical causation, which is not within common knowledge or experience, must be established by scientific or medical evidence showing the relationship between the complained of condition and the asserted cause." *Bond*, 322 S.W.3d at 170 (internal quotation marks and citations omitted). *See also T.H. v. Sonic Drive In of High Ridge*, 388 S.W.3d 585, 591 (Mo. App. E.D. 2012) (affirming Commission's determination in light of the standard of review that medical testimony was sufficient competent evidence of medical causation where that testimony and claimant's testimony supported determination that sexual assault was prevailing factor in stress and depression); *Johnson v. Indiana W. Exp. Inc.*, 281 S.W.3d 885, 892 (Mo. App. S.D. 2009) ("When the right to compensation depends on the acceptance of one of two competing medical theories, the

13

issue is one of fact and the commission's finding will not be disturbed unless the commission acted unreasonably in accepting testimony that was not substantial or decided the issue contrary to the overwhelming weight of the evidence."). The weight ascribed to a medical expert's opinion is a matter within the Commission's discretion. *Bond*, 322 S.W.3d at 170 (citation omitted). "[W]here the right to compensation depends on which of two medical theories should be accepted, the issue is peculiarly for the Commission's determination." *Id.* (internal quotation marks and citations omitted). Moreover, "[i]n determining compensability and disability, where inconsistent or conflicting medical opinions exist, objective medical findings shall prevail over subjective medical findings. Objective medical findings are those findings demonstrable on physical examination or by appropriate tests or diagnostic procedures." § 287.190.6(2). However, "[d]eterminations with regard to causation . . . are questions of fact to be ruled upon by the Commission, and the reviewing court may not substitute its judgment on the weight of the evidence or on the credibility of witnesses for that of the Commission." *Spencer v. Sac Osage Elec. Co-op. Inc.*, 302 S.W.3d 792, 800 (Mo. App. W.D. 2010).

In this case, the Commission relied upon Dr. Highland's testimony that the work accident caused Moore-Ransdell's low back condition and need for treatment, including surgery. While the Commission noted Dr. Chabot's conflicting opinion as to causation, it expressly found Dr. Highland's testimony more persuasive than Dr. Chabot's. It was the Commission's prerogative to discount Dr. Chabot's testimony in favor of Dr. Highland's,

14

and we defer to its decision in that respect. *Hornbeck v. Spectra Painting, Inc.*, 370 S.W.3d 624, 632 (Mo. banc 2012); *Bond*, 322 S.W.3d at 169.[5]

The issue, then, is whether Dr. Highland's testimony, when examined in the context of the whole record as the Supreme Court prescribed in *Hampton*, constituted competent and substantial evidence to support the Commission's determination that the injury Moore-Ransdell suffered in the work accident was the primary factor in causing her low back condition and permanent partial disability. As the Commission noted in its award, Dr. Highland testified that the February 26, 2008 accident "caused the condition that [he] treated her for"; necessitated the course of treatment that he provided, including the anterior fusion surgery; was "the primary factor" that contributed to "[t]he overall condition of her lumbar spine"; and was the "prevailing cause" . . . "of this condition that she had when she came to see [him]."

The record contains sufficient competent evidence to support the Commission's determination that Moore-Ransdell's workplace accident was the "prevailing" or "primary" factor that caused her injuries. § 287.020.3(1) (As noted above, "[t]he prevailing factor'" is defined to be the primary factor, in relation to any other factor, causing both the resulting medical condition and disability.") To begin, the medical history indicates that Moore-Ransdell was "well" before her injury as to "her low back and lower extremities" and that her problems were new as of her first visit to Dr. Komes soon after the work injury. Additionally, the Commission expressly found that Moore-

---

[5]Randolph County also asserts that the Commission erred in finding that Moore-Ransdell testified credibly about the onset and extent of her low back pain. Again, we defer to the Commission's credibility determinations. *Clark*, 274 S.W.3d at 617.

15

Ransdell "testified credibly to the squatting and twisting necessitated in pulling a file out of a low, full file drawer in the course of her employment for the Randolph County assessor's office and the immediate and intense low back pain resulting from that injury." Further, the Commission also expressly determined that Dr. Highland was "more persuasive" than Dr. Chabot, and the Commission stated that it based its award on the testimony of Moore-Ransdell and Dr. Highland. The Commission therefore found credible Dr. Highland's testimony that the lumbar strain from Moore-Ransdell's workplace accident "was the primary factor" in her overall condition. Smoking was another "possible" factor, but the workplace injury was the prevailing medical cause of her condition. Finally, the question presented is whether the workplace accident was the prevailing factor in Moore-Ransdell's injury, not whether the compensable injury is the prevailing factor in her overall resultant medical treatment. *Tillotson*, 347 S.W.3d at 518.

As noted above, Dr. Highland's key diagnoses were these: "(1) Acute lumbar strain in February 2008; (2) Internal disc disruption L3-4, L4-5 and L5-S1 secondary to work injury in February 2008; (3) Status post anterior and posterior fusion L3-4, L4-5 and L5-S1 secondary to work injury in February 2008." Dr. Highland's testimony explains the diagnoses of the lumbar strain as well as the two conditions related to the discs, both of which are *secondary to the work injury*. Dr. Highland maintained throughout his care of Moore-Ransdell that her continuing symptoms and need for surgery were due to the work injury. His board-certified medical opinion was that the secondary diagnoses were not merely precipitated by that work accident, but rather that the squatting down and twisting resulted in lumbar strain that "was the primary factor" of

16

the overall condition. Hence, Dr. Highland's testimony and diagnoses, once found credible by the Commission, leave little room to question the foundation of the Commission's decision. As noted above, "determinations with regard to causation . . . are questions of fact to be ruled upon by the Commission, and the reviewing court may not substitute its judgment on the weight of the evidence or on the credibility of witnesses for that of the Commission." *Spencer*, 302 S.W.3d at 800 (citation omitted). The Commission weighed competing medical explanations regarding the causation of Moore-Ransdell's injury and rejected the theory posited by Dr. Chabot.

In reaching the opposite conclusion, the Dissent attempts to characterize the degenerative disc issues as apparently inevitable in spite of the workplace strain or that the disability determination is based only on the continuing pain Moore-Ransdell suffers rather than on the workplace injury. That analysis simply does not bear out upon a full review of Dr. Highland's expert testimony, the sole expert deemed persuasive. Certainly there was evidence from which the Commission could have determined that the workplace injury merely "triggered" or "precipitated" the condition rather than being the "primary" or "prevailing" factor.[6] In any event, however, our standard of review renders that hypothetical determination moot under these facts. Our job is to review the record to determine whether there is sufficient competent evidence to support the decision of the

---

[6]In fact, as the Dissent points out, Dr. Highland responded affirmatively when defense counsel asked him whether it was his opinion that the "incident then triggered a pain from the underlying discs." Defense counsel asked several questions using the term "trigger." While it is true that "but for" causation alone is not sufficient to establish compensability under the Act because a claimant must establish that the injury was the "prevailing factor," *see* Dissenting Opinion at n.3, an action can be the "but for" cause of a medical condition or the "trigger" of a medical condition *and also be* the "prevailing factor," even though as a matter of law neither the "but for" cause nor a "trigger" *alone* mandates coverage under the Act. Additionally, Dr. Highland's testimony establishes necessary medical treatment "as may reasonably be required after the injury," which is a lower standard than the prevailing factor threshold. *Tillotson*, 347 S.W.3d at 518; § 287.140.1.

17

Commission, not to search through the record to see whether there is any evidence which, if found credible, may undermine the Commission's finding.

Notably, the Dissent excises incidental testimony that an MRI did not indicate that the work accident caused Moore-Ransdell to suffer a "fracture or anything acute like that." But an extended quote from the record provides helpful context for this comment:

> Q: And just kind of quickly, I looked through the operative note and the MRI film reports and all that. There wasn't a piece of a disc that had been -- come loose and had to be removed or a fracture or anything acute like that that you specifically addressed, was there?
>
> A: No.

That there was nothing akin to a loosened piece of disc or a fracture is not the same as saying that there was not "anything acute." In fact, Dr. Highland diagnosed Moore-Ransdell in part with an "acute lumbar strain." Regardless, that there was no fracture or injury "like that" does not yield the conclusion that the work accident necessarily could not be the prevailing cause of the injury. Nor should we conclude that the work accident was not the prevailing cause of the injury based on incidental testimony that the source of the pain was disc degeneration or that the strain caused the degeneration to become symptomatic or that lumbar strain was an "injury to the muscles and ligaments, which is *usually* a more short-term issue" (emphasis added). While it is true that the statute requires more than a simple aggravation of a preexisting condition, it is also true that the record reflects Dr. Highland's medical opinion that "***in this patient***," the lumbar strain "was the primary factor" of the overall condition. Dr. Highland's expert medical opinion may leave open the possibility that a lumbar strain in another patient

18

would not necessarily be the prevailing cause of a similar medical condition, but surmising what might hypothetically be the case in another patient ignores what Dr. Highland testified about in "this patient." There is no conflict in Dr. Highland's testimony, and even if there were, the Commission is free to believe *some*, all or none of any witness's testimony, so the minor portions which the dissent argues are in conflict may have been found not to be credible. Additionally, our standard of review is clear that "it is irrelevant that there is supportive evidence for the contrary finding." *Hornbeck*, 370 S.W.3d at 629. The record as a whole, read in proper context, is clear that Dr. Highland was not merely using conclusory "magic words" in testifying that the workplace accident was the "prevailing factor" in Moore-Ransdell's medical condition.

Point Two is denied.

## CONCLUSION

The Commission's final award is affirmed.

_____
Gary D. Witt, Judge

Hardwick, Judge, joins in the majority opinion
Ahuja, Judge, dissents in separate opinion

19



# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

RANDOLPH COUNTY, MISSOURI, )
Appellant, )
)
v. ) **WD76709**
)
TAMMY MOORE-RANSDELL, ) FILED: July 29, 2014
Respondent. )

## DISSENTING OPINION

The Labor and Industrial Relations Commission concluded that a workplace accident in which Tammy Moore-Ransdell squatted and twisted to reach into a low, over-filled filing cabinet drawer was the prevailing factor causing her permanent partial disability. Because I believe this conclusion is unsupported by sufficient competent evidence in the record considered as a whole, I respectfully dissent from affirmance of the Commission's final award.

As the majority explains, when competing medical causation testimony is presented, it is the Commission's prerogative to choose which testimony to believe. *See*, *e.g.*, *Bond v. Site Line Surveying*, 322 S.W.3d 165, 171 (Mo. App. W.D. 2010). In this case, the Commission found that the testimony of Moore-Ransdell's treating orthopedic surgeon, Dr. Thomas Highland, was the most credible concerning the cause of her disability. And Dr. Highland testified, to a reasonable degree of medical certainty, that the February 26, 2008 workplace incident was "the prevailing cause" and "primary factor" which produced the medical condition which rendered her permanently partially disabled.

The majority's analysis of the causation issue essentially ends here. And normally, I would tend to agree that, if a medical expert has testified that a workplace accident was the prevailing factor causing a disability, and the Commission indicates that it believes that testimony, we are required to defer to the Commission's credibility determination, and affirm.

But our review function is not limited simply to determining whether *any* evidence in the record supports the Commission's decision. Instead, Article V, § 18 of the Missouri Constitution requires us to decide whether the Commission's decision is "supported by competent and substantial evidence *upon the whole record*." (Emphasis added.) The Missouri Supreme Court has explained that, under the constitutional standard, "[w]hether the award is supported by competent and substantial evidence is judged by examining the evidence in the context of the whole record." *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003). "A reviewing court considers whether the Commission 'could have reasonably made its findings, and reached its result, upon consideration of all the evidence before it.'" *Hornbeck v. Spectra Painting, Inc.*, 370 S.W.3d 624, 629 (Mo. banc 2012) (quoting *Wood v. Wagner Elec. Corp.*, 197 S.W.2d 647, 649 (Mo. banc 1946)). Importantly, in conducting our review we do <u>not</u> view the evidence in a light most favorable to the Commission's decision. *Hampton*, 121 S.W.3d at 223 (overruling decades of contrary precedent on this point).

In this case, the rule that we must consider the whole record dovetails with a second well-established rule: "[t]he ultimate importance of the expert testimony is to be determined from the testimony as a whole." *McGrath v. Satellite Sprinkler Sys., Inc.*, 877 S.W.2d 704, 708 (Mo. App. E.D. 1994) (overruled on other grounds by *Hampton*, 121 S.W.3d 220).[1] In addition, an

---

[1] Quoted in *Thorsen v. Sachs Elec. Co.*, 52 S.W.3d 611, 619 (Mo. App. W.D. 2001) (overruled on other grounds by *Hampton*, 121 S.W.3d 220); *see also, e.g.*, *Hinrichs v. Young*, 403 S.W.2d 642, 646 (Mo. 1966); *Morales v. State*, 323 S.W.3d 466, 471 (Mo. App. E.D. 2010) ("In determining whether the expert's opinion is

2

expert's expression of an ultimate conclusion, standing alone, does not constitute substantial competent evidence to support an administrative decision; instead, the expert must provide specifics explaining how and why his or her opinions apply to a particular case.[2]

Therefore, the fact that Dr. Highland may have "said the magic words," by expressing an ultimate causation opinion which parroted the statutory standard, does not end our inquiry. We must look beyond Dr. Highland's statement of his ultimate conclusions.

The issue here is not one of *choosing between competing medical theories* – the Commission has already done that. The issue, instead, is *determining what Dr. Highland's testimony means*, when considered in the context of that testimony as a whole.

Looking beyond the conclusory statements on which the majority relies, the remainder of Dr. Highland's testimony, and his medical records, establish that Randolph County is not liable for Moore-Ransdell's permanent disability. Instead, Dr. Highland's testimony establishes that the February 2008 work accident merely triggered Moore-Ransdell's preexisting degenerative disc disease to become symptomatic, and that it was this preexisting degenerative condition – *not* the workplace incident – which caused her permanent partial disability.

Dr. Highland testified that, before the work accident, Moore-Ransdell had degenerative disc disease, which is a condition that progresses over time due to aging and normal activities. The progression of Moore-Ransdell's condition may also have been exacerbated by her thirty-seven-year smoking habit. Dr. Highland testified that people with degenerative disc disease like

---

rendered with the required degree of certainty, the court should look at the testimony as a whole."); *State v. Granberry*, 530 S.W.2d 714, 729-30 (Mo. App. 1975).
   [2] *See generally Smith v. U.S. Postal Serv.,* 69 S.W.3d 926, 929 (Mo. App. S.D. 2002) (holding that, where medical evidence is required to establish causation, a doctor's conclusory opinion, without more, does not constitute substantial and competent evidence); *Kansas City Power & Light Co. v. Searcy*, 28 S.W.3d 891, 896 (Mo. App. W.D. 2000) (rejecting doctor's opinion that particular work assignment would cause employee to experience "stress related panic attacks," where letter "simply concludes, without providing any specifics," that this would result); *Reed v. Labor & Indus. Relations Comm'n*, 664 S.W.2d 650, 653 (Mo. App. S.D. 1984).

Moore-Ransdell can experience pain, and even the need for surgery, spontaneously and without any work-related accident.

Dr. Highland testified that the February 2008 work accident caused Moore-Ransdell to suffer a lumbar strain. He explained that this lumbar strain was an "injury to the muscles and ligaments, which is usually a more . . . short-term issue." Dr. Highland did not find, and the MRIs did not indicate, that the work accident caused Moore-Ransdell to suffer a "fracture or anything acute like that."

As opposed to the "short-term issue" presented by the lumbar strain, Dr. Highland testified that "the continued pain" that Moore-Ransdell experienced "was from the deteriorating discs that she had." Dr. Highland stated that it was this continuing pain from Moore-Ransdell's underlying degenerative disc condition that he treated; in particular, he testified that "that the primary problem that the [three-level fusion] surgery addressed was the underlying degenerative condition of the back that had just become symptom[at]ic."

Importantly, Dr. Highland testified that the February 2008 incident did not cause Moore-Ransdell's degenerative disc condition to become worse. Instead, he stated unequivocally that the workplace accident "didn't advance the degeneration of the spine. It just caused the degeneration to become symptomatic." In other words, the workplace accident merely "triggered a pain from the underlying discs." Dr. Highland agreed "that any similar incident, even a minor one outside of work, could have just as easily triggered some kind of pain mechanism" in Moore-Ransdell's back.

Dr. Highland's medical records are consistent with his deposition testimony. Thus, Dr. Highland's notes on his initial visit with Moore-Ransdell in May 2008 identify disc degeneration and stenosis as the source of her complaints:

4

I reviewed her x-rays she brought with her . . . Her lumbar spine shows three-level degenerative disease at L3-4, 4-5 and 5-1, but she has some bulging of the 4-5 disc and it is causing some stenosis. There is some facet hypertrophy probably contributing, but there is some stenosis at 4-5. I think this is where her problem is coming from.

Dr. Highland did not see Moore-Ransdell for approximately two years from August 2008 until August 2010. His notes from her August 30, 2010 visit state the following as his entire "Impression" of her condition: "Severe degenerative disc disease L5-S1 with mild degenerative disc disease at L3-L4 and L4-L5."

Following her August 2010 visit, an MRI was taken of Moore-Ransdell's lumbar spine. Based on the MRI results, Dr. Highland's told her that she required a three-level spinal fusion *to treat the significant disc degeneration* from which she suffered. His notes state:

I talked to Tammy Ransdell about her MRI scan. It does show further degeneration at L3-L4 and L4-L5 with some inflammatory changes at L5-S1. She has increasing bulging of the L3-L4 disc with some nerve root compression at that level.

I told her I thought she needed to treat this with an anterior fusion and we should possibly consider a laminotomy at L3-L4 and L4-L5, but I thought her primary surgery needed to be an anterior fusion at those three levels.

Finally, in a letter to Moore-Ransdell's counsel in October 2010, Dr. Highland again stated that her degenerative disc condition was the cause of her continuing pain:

[Moore-Ransdell] came back to see me in August 2010 because of persistent pain in her back and increasing pain and numbness and weakness in the left leg. I re-evaluated her including x-rays and an MRI scan. She has continuing degeneration of all three segments and increasing stenosis. *She has continuing degeneration of all three segments in her back which were the source of her pain.* When I saw her in 2008 it included L3-4, L4-5 and L5-S1.

(Emphasis added.)[3]

---

[3] In his October 2010 letter, and in a subsequent letter to counsel in January 2012, Dr. Highland stated that the "[i]nternal disc disruption to L3-4, L4-5 and L5-S1" which Moore-Ransdell was experiencing was "secondary to work injury in February 2008," and that her need for surgery was directly related to the February 2008 incident. Dr. Highland also testified on direct examination during his deposition that the workplace incident "caused" the condition which he treated with surgery. These statements support the conclusion that the February 2008 workplace

Reviewing Dr. Highland's testimony and clinical notes in their entirety establishes that, while the February 2008 incident may have triggered continuing pain from Moore-Ransdell's degenerative disc condition, it is the degenerative condition – *not* the February 2008 incident – which is the prevailing factor causing Moore-Ransdell's ongoing disability. In these circumstances, the Commission's final award must be reversed. As amended in 2005, § 287.020.3(1)[4] requires that, to be compensable, a workplace accident must be "the prevailing factor in causing both the resulting medical condition and disability," meaning that the work accident is the "primary factor, in relation to any other factor, causing both the resulting medical condition and disability." The statute makes emphatically clear that "[a]n injury is not compensable because work was a triggering or precipitating factor." § 287.020.2. It also specifies that "[o]rdinary, gradual deterioration, or progressive degeneration of the body caused by aging or by the normal activities of day-to-day living shall not be compensable." §§ 287.067.2, .3. Under the 2005 amendments to the Worker's Compensation Law, "[i]t is not sufficient that the [work-related] event simply aggravates a preexisting condition." *Johnson v. Indiana W. Express, Inc.*, 281 S.W.3d 885, 892-93 (Mo. App. S.D. 2009) (citing *Gordon v. City of Ellisville*, 268 S.W.3d 454, 459 (Mo. App. E.D. 2008)).

Fairly read in its entirety, Dr. Highland's testimony shows only that the February 2008 workplace incident triggered symptoms from Moore-Ransdell's pre-existing degenerative disc condition. The prevailing factor causing the continuing pain, surgical treatment, and permanent disability is Moore-Ransdell's pre-existing degenerative disc condition, not the lumbar strain

---

accident was a "but for" cause of Moore-Ransdell's degenerative disc condition becoming symptomatic when it did. But this sort of "but for" causation is not sufficient to establish compensability under the "prevailing factor" standard. *See*, *e.g.*, *Mo. Alliance for Retired Ams. v. Dep't of Labor & Indus. Relations*, 277 S.W.3d 670, 684-85 (Mo. banc 2009) (Teitelman, J., dissenting) ("prevailing factor" causation standard of § 287.030.3(1) exceeds proximate causation standard applicable in common-law tort cases).

[4] Statutory citations refer to the 2000 edition of the Revised Statutes of Missouri, as supplemented through the 2013 Cumulative Supplement.

caused by the February 2008 accident.[5]  While our standard of review is deferential, "deference does not imply abandonment or abdication of judicial review." *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003).[6]  We should reverse the Commission's final award.

_____
Alok Ahuja, Judge

---

[5] In her briefing, Moore-Ransdell suggests that the issue here is not whether the workplace accident was the "prevailing factor" causing a compensable injury, but instead whether particular medical treatments were necessary to cure or relieve the effects of the compensable injury she undeniably suffered (namely, the lumbar strain).  Moore-Ransdell cites *Hornbeck v. Spectra Painting Inc.*, 370 S.W.3d 624, 633-36 (Mo. banc 2012), and *Tillotson v. St. Joseph Medical Center*, 347 S.W.3d 511, 517-21 (Mo. App. W.D. 2011), to support her argument.  It is clear from the record, however, that the Commission's disability determination is based on the continuing pain Moore-Ransdell suffers as a result of what Dr. Highland testified was a degenerative disc condition.  Moreover, as explained in the text, Dr. Highland's testimony establishes that the medical treatment he provided to Moore-Ransdell related solely to the degenerative disc condition, not to the "short-term" lumbar strain which may have triggered her degenerative condition.  All of the medical expenses for which Moore-Ransdell sought to recover were for dates of service in October 2010 or thereafter, more than 2 ½ years after the filing-cabinet incident.

[6] *See also Otay Mesa Prop., L.P. v. United States Dep't of Interior*, 646 F.3d 914, 916 (D.C. Cir. 2011): "Substantial evidence is a deferential standard.  But deference is not abdication.  This case illustrates the significance of that distinction."